**TURNER et al. v. ZANES et al.**

No. 13832.

Court of Civil Appeals of Texas. Dallas.

Oct. 17, 1947.

Rehearing Denied Nov. 14, 1947.

L. N. D. Wells, Jr. and W. F. Bane, both of Dallas, and Padway, Goldberg & Previant, of Milwaukee, Wis., for appellants.

Bowyer, Gray, Thomas, Crozier & Jaffe, of Dallas, for appellees.

YOUNG, Justice.

The appeal was from an order of injunction granted upon final hearing and following a labor dispute.

Plaintiffs below were Zanes Freight Agency, a copartnership composed of W. R. Zanes, Sr., W. R. Zanes, Jr., and Grover Funderburk; Merchants Delivery, Inc., and Zanes-Ewalt Warehouse, a corporation. Zanes Freight Agency is engaged in the pickup and delivery of goods, wares and merchandise in the City of Dallas, having contracts with four railroads and written or verbal contracts with some twenty-four truck lines, whereby freight is picked up in their trucks and delivered to depots of truck lines and railroads for customers of all concerned; likewise picking up freight at railroad and truck line depots for delivery to various consignees, all of which service is performed wholly within the City of Dallas. The business of Merchants Delivery, Inc., is the delivery of packages from local wholesale and retail merchants to their city customers, also handling pool car shipments for Acme Freight Company. Zanes-Ewalt Warehouse maintains and operates a city warehouse where commodities are stored and receipts issued therefor. Plaintiff concerns operate separately in the matter of business establishments, offices, books and employees, but are owned by above individuals.

Adverse parties herein are Local Union No. 745 and C. B. Kepke, successor to James B. Turner, individually, and as business agent of Local No. 745, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, all hereinafter styled labor defendants; the twenty-four companies already mentioned being styled truck line defendants, operating freight lines into the City of Dallas, with common carrier permits issued by the Railroad Commission of Texas and the Interstate Commerce Commission.

A temporary injunction had heretofore issued, June 4, 1946, in suit filed the previous May 11th, in connection with the following antecedent facts: On February 21, 1946 an election had been held among employees of Zanes Freight Agency under National Labor Relations Board supervision to determine whether Local No. 745 should be designated as bargaining agent for certain of the company employees, towit: Drivers, their helpers, station men and mechanics; office and supervisory employees having been excluded from such election. Out of approximately sixty employees eligible to vote, thirty-nine cast valid votes, twenty-seven for the union and twelve against; and, as a result, on March 13, the Union was designated by NLRB to represent such employees for purpose of collective bargaining. Shortly thereafter business agent Turner of Local 745 presented to Zanes Freight Agency a contract which the Union desired to consummate between the Agency and employees of such company represented by it; Mr. Zanes, Sr., not accepting the contract but submitting a counter proposal, rejected by Turner who insisted that his form of contract and no other be signed. Principal difference between the parties was a pro-

146

viso for the "union shop," and no further negotiations were carried on. Turner then went to see some of Zanes freight employees, talking to between five and seven at Southern Pacific docks, Dallas, inquiring if they were still ready to strike; and on April 22, 1946 the Union put a picket line (no Zanes employees) at both the place of business of Zanes Freight Agency, 1500 South Preston, and in vicinity of the MKT Railway Freight Office, carrying placards worded "Zanes Freight Agency employees on strike. Truck Drivers Local No. 745 A. F. of L."

Zanes Freight Agency also had pickup and delivery agreements with the following railroads: MK&T Railway Company of Texas, St. Louis & Southwestern Railway Company of Texas, T. & N. O. Railway Company, C. R. I. & G. Railway, F. W. & D. C. Railway and T. & P. Railway Company. Coincident with picketing, the following notices were sent generally to truck line defendants, railroads and others by Local 745, such notices being posted on company bulletin boards by Union stewards of the companies employing Local 745 members: "Office of the Secretary-Treasurer * * * Jas. B. Turner, Secretary-Treasurer Dallas General Drivers, Warehousemen and Helpers Local Union No. 745 1727 Young St. Dallas, Texas. Affiliations: Local Texas State Federation of Labor, Dallas Central Labor Council National American Federation of Labor, and International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers. April 22, 1946 Dear Sir: Effective Monday, April 22, Zanes Freight Agency of Dallas, Texas will be on strike by the Dallas General Drivers, Warehousemen and Helpers Local Union No. 745. Please refrain from doing business with said Cartage Company until this dispute is settled." "4–27–46 Special Bulletin To Whom It May Concern: Dallas General Drivers, Warehousemen and Helpers Local Union No. 745 has the following firms on strike, or on the unfair list, and we do not want you to do business in any manner with the firms listed below. Johnson Motor Freight Lines Braswell Freight Lines Zanes Freight Agency Merchants Delivery Service Binyon-O'-Keefe Storage Company Zanes-Ewalt Corp. Bonded Warehouse This Union will appreciate all your cooperation in this matter and we expect the same. General Drivers, Warehousemen and Helpers Local Union No. 745, Dallas, Texas." "Truck Drivers Local Union No. 745 A. F. of L. on strike against the Zanes Freight Agency Please do not be misled—Truck Drivers Local No. 745 are on strike and we have this firm on our We Don't Patronize List Remember we are still on strike Dallas General Drivers—Local Union No. 745, A. F. of L."

Labor defendants also sent out telegrams, viz.: "April 22, 1946 Mr. Forest T. Bice, Cotton Belt Railroad, 910 Young Street, Dallas, Texas. Zanes Freight Agency on strike by the Dallas General Drivers, Warehousemen and Helpers Local Union No. 745. Please cooperate to the fullest extent of your ability on this matter. T. T. Neal, General Organizer Charge to Local Union No. 745." Mr. T. W. Waldrop, Southern Pacific Transportation Company, Houston, Texas. April 25, 1946. Southern Pacific Lines using Zanes Freight Agency which we have on strike at Dallas. Continued use of this company after Monday, April 29 will necessitate Over-the-Road Division of the Southern Conference of Teamsters instituting Action against Southern Pacific Motor Transport Company. Advise you to contact me immediately. Will be as Whitmore Hotel until early Saturday morning and at Hotel New Orleans, La. all day Saturday. Dexter L. Lewis International Representative." "May 1, 1946 Mr. T. W. Waldrop, Vice President and Gen. Manager, Southern Pacific Bldg., Southern Pacific Transportation Co. Houston, Texas. Mr. B. C. James, Ass't Vice Pres., Texas & Pacific Bldg., Texas & Pacific Transports Co., Dallas, Texas. Mr. H. R. Moore, Jr., Southwestern Transportation Co., Texarkana, Texas. The company doing business with Zanes Freight Agency, Dallas, Texas which our Union Local No. 745 has on strike we are maintaining the picket line on this company your contract provides no crossing of picket line. We will not permit technicalities to be used for the purpose of giving succor to our enemies I am at this time calling upon you people to discontinue busi-

ness with Zanes or suffer the consequences that we will initiate. Dexter L. Lewis, International Representative." "MKT A. J. Pickett, Ry Exchange Building, St. Louis, Missouri. H. W. Horton, 508 National Building, Pine Bluff, Arkansas. W. M. Crawford, Grand Lodge Representative, 108 East Ninth, Fort Worth, Texas. April 24, 1946. Dallas General Drivers, Warehousemen and Helpers Local Union No. 745 has won an NLRB election with Zanes Freight Agency, a cartage company that handles railway freight in the City of Dallas. They refuse to sign our uniform City Pickup and Delivery contract. Have Company on strike and picket on. Please have your local Chairman refuse to handle merchandise for said cartage company. T. T. Neal International Representative Charged to Local Union No. 745."

Union representatives further called upon the customers of Zanes Freight Agency named in their petition, among others, stating that the two principals were in dispute and demanding support of said concerns by their withdrawal of patronage from plaintiff agency. Immediately all truck line defendants except two [1] ceased doing business with plaintiffs; as did John Sexton Company, a customer under contract with Merchants Delivery, Inc. [2]

Then ensued a period covered by the temporary injunction of June 4, 1946, when in January 1947 a new and independent controversy arose between defendant Union and Zanes-Ewalt Warehouse. On January 1, this appellee had acquired quarters at Hawkins Street and Pacific Avenue in the City of Dallas, under a lease from the building owner, Eagle Ford Land and Development Company, which premises, up to December 31, 1946, had been occupied by Texas & Pacific Terminal Warehouse Company. No contractual relations existed between the two lessees, Zanes-Ewalt assumed no obligation of such former tenant, nor did there exist any connection between lessor and successive lessees in matter of stockholders, officers or directors. Defendant Union had secured an employment contract covering employees of Texas & Pacific Terminal Warehouse Company and, in taking over the building, a continuation of employment to some eighteen of these workers was offered by Zanes-Ewalt; it being contended that the latter should recognize the prior union contract. Recognition was refused; M. R. Dixon, assistant business manager of the Union, filing complaint with the NLRB and, on January 6, placing a picket at the premises, telling Zanes-Ewalt employees of the Union that they could then go on strike. When the picket line was established, and as a result of conference between Dixon and representatives of the Brotherhood of Railway Trainmen, Union employees of the Texas & Pacific Railway Company, whose tracks ran into the warehouse, would not deliver freight to Zanes-Ewalt or their customers in the warehouse because of the picket line. In the same connection there was testimony that trucks belonging to three different companies attempted to enter the warehouse premises at Pacific and Hawkins Streets and, when approached by the picket, backed out of the gate and would not enter.

Without further detail from a rather lengthy statement of facts, the court on March 5, 1947 entered judgment of permanent injunction of which the following summary is material: (1) Paragraphs one and two, in general, restrained appellant Union and nonappealing truck line defendants from a secondary boycott against plaintiff "notwithstanding the provisions of

---

[1] Texas & Pacific Transport Company and Southern Pacific Transportation Company; and, as to these, Dexter L. Lewis, International Representative of the Teamsters Union, on May 1, 1946, sent letters to NLRB, National Wage Adjustment Board and Department of Labor, giving notice of intention to strike because of existence of a labor dispute, the issue being that such companies "are doing business with Zanes Freight Agency, which Local Union No. 745 of the International Brotherhood of Teamsters has on strike."

[2] Contracts between the Union and all truck line defendants contained the proviso: "The employer shall not request, instruct or require any employee to go through a picket line of a striking union * * *" (to which was added in 'Over-the-Road' or intercity contracts "nor to handle 'unfair goods,' declared so by the Unions signed to this agreement.")

any contract existing between the said Local No. 745 and any of such defendants relating to the crossing of picket lines and the handling of so-called 'unfair goods' or so designated as 'unfair' by the labor union defendants"; paragraph three prohibited secondary picketing of railroads, truck lines and named customers of plaintiffs in consequence of any dispute between the plaintiffs and Union, also providing against ambulatory pickets "to follow or accompany plaintiffs' trucks or vehicles while operating in the usual course of business"; (2) labor defendants were authorized to establish a picket line at the place of business of Zanes Freight Agency and Zanes-Ewalt Warehouse with following provisos: (a) Picketing shall be peaceful and not to interfere with ingress or egress to either of said such places of business; and (b) shall not extend beyond the Freight Agency premises at 1500 South Preston Street "either actually or constructively"; (c) said picket line at plaintiffs' warehouse shall be on the Pacific and Hawkins Street side and not extend to within 100 feet of the railroad track entering said warehouse and in nowise to interfere with movement of freight, in and out, over such track; (d) or interfere with delivery of freight or movement thereof in and out of the two places of business by common carriers, either truck line defendants or railroads; (e) picket line shall be for the limited purpose of persuading employees of plaintiff to leave their employment or dissuading third parties from becoming employees, and not to consist of more than two pickets at any one time at either place; (f) pickets shall be limited to hours from 6 a. m. to 7 p. m. daily unless employees (other than officers, supervisors, clerical help, etc.) are present and performing usual functions at other times; (g) that should any of the named railroads or truck lines, while operating under common carrier permits, their servants or employees, refuse to deliver freight to plaintiffs or accept freight at their premises because of presence of pickets, then upon notice the picket line shall be removed and not be re-established until after acceptance or delivery of the freight involved or movement of trains and trucks has been completed.

Under paragraphs five, six and seven of the judgment, labor defendants were restrained from doing any acts with respect to contractual relationships between plaintiffs and railroads, also T. & P. and Southern Transportation Companies, by way of intimidation or coercion to terminate contracts; the latter transportation companies being in turn restrained from terminating contracts with plaintiffs on account of activities of labor defendants under the foregoing circumstances; and the same restraint, in effect, was made applicable to named customers.

Upon cross-action of certain truck line defendants, appellants were enjoined from authorizing any strike of employees or picketing on or about the premises of such defendants on account of any labor dispute between Local 745 and plaintiffs or any provision of contract existing between said Local and the particular defendants. Under paragraph eight labor defendants were accorded the right of "publicizing the controversy with plaintiffs in an accurate, peaceful and truthful manner, without threats, coercion or intimidation, actual or implied, against any of the parties herein mentioned, except as herein limited."

The appeal was by labor defendants only, the points presented being in substance that (1) a labor dispute existed between appellants and appellees (plaintiffs below) and their non-striking employees; (2) picketing as invoked by appellants is privileged under the free speech guaranties of both Constitutions of Texas and the United States; (3) picketing under the instant circumstances is privileged and authorized by Arts. 5152 and 5153, Texas Revised Statutes; (4) refusal of defendants to cross a picket line or handle "unfair freight" is not illegal; (5) the trial court had no jurisdiction to restrain defendant truck lines from interchanging freight with plaintiffs, such matters being within the exclusive jurisdiction either of the Interstate Commerce Commission or the Texas Railroad Commission; (6) the judgment of injunction and any laws of Texas upon which it might be purportedly based are unconstitutional and void because in violation of Art. 1, sec. 8, Art. 6, and Thirteenth and Fourteenth Amendments, United States

Constitution; also too vague and indefinite for enforcement.

From above points and opening statement of appellants' brief, plaintiffs' cause of action is assumed to be one merely to restrain the picketing of their places of business, but the Union's right to peacefully picket as contemplated by Arts. 5152, 5154, Vernon's Ann.Civ.St., is nowhere brought in question. On the other hand, material allegations of plaintiffs' trial petition raises issues challenging the right of the Union in concert with others to engage in activities resulting in a secondary boycott, interference with plaintiffs' contracts, violation of the Texas antitrust laws, creation and carrying on of restrictions in the free pursuit of a lawful business, and prevention or lessening of competition in aid of commerce. In the same connection, a labor dispute may be assumed as the basis of controversy, the litigation following a refusal on part of Zanes Freight Agency to sign a closed shop agreement with defendant Union.[3]

The activities of appellants pursuant to strike were twofold in nature: First, consisting of letters, telegrams, personal calls, etc., giving notice of strike and invoking the proviso in contracts of truck line defendants against crossing of picket lines; second, the actual picketing of plaintiffs' places of business, consisting of the usual marching to-and-fro before the establishments involved in the dispute, accompanied by the display and carrying of signs, placards or banners bearing statements of grievance touching the particular controversy. Teller, Labor Disputes, Vol. 1, sec. 109.

By stipulation of the parties and otherwise, the material facts herein are not controverted. Obviously, under the first phase of these strike activities (notices, messages and communications), a cessation of business relations with plaintiffs was demanded of the persons addressed, a refusal inviting similar consequences to themselves. Turner, Union agent, frankly stated that the purpose of his calls upon both carriers and customers was to advertise the strike and to get them not to do business with Zanes; testifying:

"Q. But, your object was that you wanted these people not to do business with him? A. Until this grievance was settled.

"Q. That's right by way of punishment against him because he wouldn't sign your contract, isn't that true? A. That's right, sir. * * *

"Q. You said a moment ago that where you do all these things that have been done in this case, and the party you are dealing with, your adversary, suffers some damages, so far as you are concerned that is only incidental? Is that your testimony? A. That's right, sir.

"Q. And, if a man's business, by your activities, is completely destroyed, that is still incidental so far as you are concerned; is that correct? A. That's right, sir."

Vincent, an employee of H. J. Heinz Company, testified: "A. During our negotiations with the union, in which they negotiated a contract with us, Mr. Neal Hodges (Union agent) made the statement that they were going to put Mr. Zanes out of business if he didn't get in line with the union."

As a result, all except the railroads and two truck line defendants ceased doing business with Zanes Freight and other plaintiffs, to the Agency's immediate damage, it being stipulated that "Zanes Freight Agency sustained pecuniary loss and damage as a result of the activities engaged in by the defendant labor union, the exact amount of which is impossible of estimation and calculation at this time."

■ The foregoing facts conclusively establish a conspiracy in restraint of trade or secondary boycott; such activities on part of a labor organization being violative of Texas statutes defining trusts, conspiracies against trade, pools and monopolies, as our courts have consistently held from an early date. Arts. 7426, 7428, Vernon's Ann.Civ.St.; Webb v. Cooks', Waiters' and Waitresses' Union, Tex.Civ.App., 205 S.W. 465; Borden Company v. Local No. 133 of Teamsters, etc., Tex.Civ.App., 152 S.W.2d

---

[3] Placards displayed by pickets at the Agency premises stated that Zanes Employees were on strike, although only three or four actually quit as a result of strike.

828; Carpenters and Joiners Union v. Ritter's Cafe, Tex.Civ.App., 138 S.W.2d 223, Id., Tex.Civ.App., 149 S.W.2d 694; Id., 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143.

Aside from the above aspect of boycott, these labor activities seeking to breach subsisting contracts between plaintiffs, truck line drivers and railroads, to which the local was neither a party nor in privity, are uniformly deemed tortious and enjoinable. Evans v. McKay, Tex.Civ. App., 212 S.W. 680; Texas Motion Picture and Vitaphone Operators v. Galveston Motion Picture Operators, Tex.Civ.App., 132 S.W.2d 299; Carpenters and Joiners Union v. Ritter's Cafe, supra; Borden Company v. Local No. 133 of Teamsters, etc., supra. Likewise, as to the restraint against all nonappealing truck lines. The record discloses that these common carriers, upon insistence and demand of labor defendants, were refusing to accept freight from plaintiffs tendered in due course of business. This was clearly in violation of their duty as common carriers under Arts. 882, 884, 6360, Vernon's Ann.Civ.St., to transport all tendered freight, constituting an unlawful act. Burlington Transportation Co. v. Hathaway, Iowa, 234 Iowa 135, 12 N.W.2d 167, 149 A.L.R. 1238.

But appellants strenuously argue (1) that all related dealings with truck lines, railroads and customers of plaintiff were simply incidents of "peaceful picketing" as authorized by Arts. 5152, 5153, 5154, Vernon's Ann.Civ.St., and the Fourteenth Amendment, United States Constitution, guaranteeing the right of free speech; (2) that neither the common law nor Texas antitrust laws prohibit a labor combination from acts promotive of its own legitimate aims and purposes, even though others may be injured thereby; defendants in the instant case merely seeking public support in the obtaining of better wages, hours and conditions of employment; citing Harris v. Thomas, Tex.Civ.App., 217 S.W. 1068; Cline v. Insurance Exchange, Tex.Civ. App., 154 S.W.2d 491, affirmed 140 Tex. 175, 166 S.W.2d 677; Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L. Ed. 1093; Milk Wagon Drivers' Union v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836, 132 A.L.R. 1200; A. F. of L. v. Swing, 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855; Carlson v. People of State of California, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104; Bakery and Pastry Drivers, etc., v. Wohl, 315 U.S. 769, 62 S.Ct. 816, 86 L.Ed. 1178; Senn v. Tile Layers Protective Union, 301 U.S. 468, 57 S.Ct. 857, 862, 81 L.Ed. 1229.

However proper may have been appellants' labor objective, the "peaceful picketing" contemplated under Art. 5153, Vernon's Ann.Civ.St., must be conducted by "lawful means"; Justice Brandeis in the Senn Case, supra, pointing out that the term implies "not only absence of violence, but absence of any unlawful act." In Borden Co. v. Local No. 133 of Teamsters, etc., supra, the Court, after a review of the Swing and Meadowmoor cases, decided that the state court was not thereby precluded from affording protective relief where picketing involved [152 S.W.2d 833] "such conduct as the state is authorized to declare unlawful, or the breach of such laws as are necessary for the protection and welfare of its residents"; concluding that "The anti-trust laws of this state, R.S. Articles 7426 and 7428 and Articles 1632, 1634, and 1635 of the Penal Code, which prohibit any attempt to create restrictions in the full pursuit of any lawful business, or any agreement or threat to boycott a person or association by a refusal to buy from or sell to him or it, or to induce others to do so, are in full force and effect. Their constitutionality has recently been sustained by the Supreme Court of the United States in the case of Tigner v. State of Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124, 130 A.L.R. 1321, and they have not been repealed or modified by the statutes which provide for the creation of labor organizations and for peaceful picketing (R.S. Articles 5152, 5153, 5154), in so far as they apply to the state of facts in the instant case."

The second phase of strike activity— peaceful picketing—was permitted along with such regulations as the trial court considered reasonable in view of the attendant facts. Though the judgment provided that individual picketing should be for the limited purpose of persuading em-

ployees to leave said employment or the dissuading of third parties from the employment [4], labor defendants were permitted to fully publicize their dispute by way of distribution of handbills, posting of notices on bulletin boards of various customers, truck line defendants and railroads. (As viewed by the trial court, it was only the threats, intimidation, acts of coercion, unlawful interference with contractual relations and acts violative of the antitrust laws that became items of restraint.)

Appellants complain, however, that their right to peacefully picket is subject to none of the limitations imposed by judgment perforce of the identification of that activity with freedom of speech under the Fourteenth Amendment, United States Constitution. Places of allowed picketing were at 1500 South Preston and at Pacific and Hawkins Streets, Dallas, limitations thereon generally being: Pickets shall not interfere with ingress and egress to premises; extent of picket line specified and prohibited during certain hours; Prohibiting interference with movement of freight into and out of the premises and that the picketing should be peaceful.

■ Identification of picketing with the freedom of speech clause (U. S. Constitution) was first announced in Senn v. Tile Layers Protective Union, supra, 1937, viz.: "Members of a union might, without special statutory authorization by a state, make known the facts of a labor dispute, for freedom of speech is guaranteed by the Federal Constitution." There is no doubt, since above pronouncement and under succeeding decisions of the United States Supreme Court, that picketing in a labor dispute is a form of communication and, as such, has the cited constitutional protection. But implicit in these same decisions is the conclusion that "peaceful picketing" may involve something more than the exercise of freedom of speech, i.e., "dissemination of information concerning the facts of a labor dispute" (Thornhill v. State of Alabama, supra [310 U.S. 88, 60 S.Ct. 744]); and it is this "something more" (words or

acts having the effect of force) that may be the subject of reasonable regulation. The concurrence by Justice Douglas in Bakery and Pastry Drivers, etc., v. Wohl, supra, goes on to say [315 U.S. 769, 62 S.Ct. 819]: "Picketing by an organized group is more than free speech, since it involves patrol of a particular locality, and since the very presence of a picket line may induce action of one kind or another, quite irrespective of the nature of the ideas which are being disseminated. *Hence those aspects of picketing make it the subject of restrictive regulation.*" (Emphasis ours.) The main opinion (Wohl) likewise points out that "A state is not required to tolerate in all places and all circumstances even peaceful picketing by an individual." And a conclusive answer to the insistence that picketing is constitutionally immune from all regulation may be found in Carpenters and Joiners Union v. Ritter's Cafe, supra (affirmed by U. S. Supreme Court), where, in the dissenting opinion of Justice Reed, one of the most liberal members of that court, it is stated [315 U.S. 722, 62 S.Ct. 815]: "We are not here forced, as the Court assumes, to support a constitutional interpretation that peaceful picketing 'must be wholly immune from regulation by the community in order to protect the general interest.' We do not doubt the right of the state to impose not only *some but many restrictions upon peaceful picketing. Reasonable numbers, quietness, truthful placards, open ingress and egress, suitable hours or other proper limitations, not destructive of the right to tell of labor difficulties, may be required.*" (Emphasis ours.)

■ The restrictions complained of herein, not being inconsistent with the right of free speech, but adjusted to it, we are not prepared to say that same were in anywise unwarranted or unreasonable.

■ Appellants further contend that the refusal of truck line defendants to accept appellees' freight was a matter solely within the jurisdiction of either the Interstate Commerce Commission or the Texas Rail-

---

[4] In Texas, picketing is so limited by Art. 5153, but recent U. S. Supreme Court pronouncements in the Carlson, Thornhill and Swing cases, accord a union, under the Fourteenth Amendment, the right to publicize all grievances involved in the dispute.

road Commission. Neither of the plaintiffs was a common carrier of freight and, owing to the nature of their several businesses, a certificate as such from the named Commissions was not required. Even conceding a right of the Union to complain in such particular, we think that it was these administrative bodies that had no jurisdiction. Plaintiffs' suit was for prevention of boycott, against interference by labor defendants with third party contracts and to restrain the Union in concert with others from violating the Texas antitrust laws, involving common law and statutory rights that the courts alone were competent to determine. 49 U.S.C.A. § 22; Louisville & N. Ry. Co. v. Cook Brewing Co., 223 U. S. 70, 32 S.Ct. 189, 56 L.Ed. 355; 11 Am. Jur. 129.

The entire judgment is attacked as vague and indefinite in various paragraphs and recitals. To the contrary, all parts thereof appear sufficiently definite and certain, labor defendants being clearly advised of what they can and cannot do. Reach of the injunction to "Disputes hereinafter arising" might ordinarily be censurable as prejudging future activities conceivably lawful. But the language in context relates to secondary picketing—always an illegal labor activity in Texas—according to the Borden case, supra, and now made expressly so by statutory enactment; see Senate Bill 167, 50th Leg. 1947, Art. 5154f, Vernon's Annotated Civil Statutes.

However, in view of recent Supreme Court decisions identifying right of free speech with peaceful picketing, the wording of sec. E, paragraph three, of the judgment would appear as unduly limiting appellants' right to disseminate information relevant to its interest concerning the facts of a labor dispute. See Thornhill and Carlson cases, supra. The subdivision in question, expressly limiting instant picketing to persuasion and dissuasion of employees, may thus be disregarded and the general provisions of paragraph eight substituted therefor, reading: "Nothing herein shall be construed to limit the right of C. B. Kepke and the Labor Union Defendants from publicizing the controversy with plaintiffs in an accurate, peaceful and truthful

manner, without threats, coercion or intimidation, actual or implied, against any of the parties herein mentioned," except as limited by other paragraphs and portions of the injunction.

Otherwise, all points of appeal are overruled and judgment of the trial court affirmed.