DICKSON et al.[1] v. NORTH EAST TEXAS
MOTOR FREIGHT LINES, Inc.

No. 13831.

Court of Civil Appeals of Texas. Dallas.

Feb. 27, 1948.

Rehearing Denied April 16, 1948.

---

[1] Opinion reserved pending Supreme Court action in Turner v. Zancs, 206 S. W.2d 144. Writ was refused no reversible error.

L. N. D. Wells, Jr. and W. F. Bane, both of Dallas, and David Previant, of Milwaukee, Wis., of Padway, Goldberg & Previant, of Milwaukee, Wis., for appellants.

Phinney, Romick & Hallman, of Dallas, for appellee.

YOUNG, Justice.

After trial to the court, Teamsters Union No. 745 A. F. of L., its officers, representatives and other named persons have here appealed from a judgment of permanent injunction. Plaintiff below is a motor carrier of freight, defendants being said Union, Dickson, its business agent, nine individuals (ex-employees of plaintiff), and eighteen other truck lines. The judgment complained of followed generally the allegations of plaintiff's petition, which prayed that all defendants be restrained from establishing and maintaining a boycott against it; from picketing its place of business with placards carrying untrue statements; from interfering with plaintiff's contracts and with commerce; from maintaining a conspiracy in restraint of trade in violation of the anti-trust laws of Texas, notwithstanding provision of contracts between said Union and truck line defendants relating to the crossing of picket lines and the handling of goods characterized by the Union as unfair. Mandatory provision of the judgment directed truck line defendants to resume interchange of freight with plaintiff; the Union and four of plaintiff's ex-employees only undertaking an appeal.

Appellee is a Texas corporation, a common carrier of freight, handling merchandise by motor vehicles over the highways of Texas and Oklahoma on permits from the Interstate Commerce Commission and Texas Railroad Commission. It has engaged in such business since 1921, employing between 130 to 165 persons, operating 92 trucks with more than 5,000 customers. Its operations extend from Dallas to Texarkana, with many terminal and intermediate points of service in North Texas and Southern Oklahoma. Appellee's daily tonnage is about 300,000 lbs; it having contracts and interchange agreements with the eighteen truck line defendants from whom it received on an average, daily, of between 175,000 and 200,000 lbs. of freight.

On September 16, 1946, M. R. Dickson, assistant business agent of appellant Union, had been furnished by eleven employees of appellee (the nine individual defendants already mentioned and two others) with slips authorizing Local 745 to act as their agent in collective bargaining. However, none of the North East Texas Motor Line employees were members of a labor union; no proceedings had been instituted before the N.L.R.B. for certification to defendant Union or other person or organization as bargaining agent for plaintiff's employees; and according to J. L. Robinson, Company president, and Bert Aldis, manager of its Dallas terminal, there had been no demands by company employees for better wages, hours and conditions of employment, when, on September 17, 1946, Robinson received a long distance call at Paris from Dickson, defendant Union's assistant business agent at Dallas. As to the ensuing conversation, the evidence is conflicting, Dickson testifying to effect of telling Robinson that the latter's employees in pickup and delivery service had asked witness to represent them in securing better wages and working conditions; requesting a conference and the signing of a union contract; that the employees would go on strike if an agreement was not signed, which request for negotiations Robinson flatly refused. On the other hand, Mr. Robinson testified to telling Dickson that he was not averse to such a conference and that "I will be glad to have you."

These eleven employees went off the job the next morning, the record being unclear as to whether they quit voluntarily, were discharged or simply went on strike; at any rate, the succeeding day (September 18) pickets were stationed around plaintiff's Dallas terminal (one or more of these dissatisfied employees participating), each picketer bearing a sign reading "North East Texas Motor Lines unfair to Teamsters Union A. F. of L." Testimony is likewise conflicting as to whether these labor activities were initiated by Dickson on behalf of the Union; its office, however, answering all inquiries to effect that a strike was on at plaintiff's premises and the company on the "unfair" list. Immediately all truck line defendants except six[2] ceased doing business with plaintiff, either because of their drivers' refusal to cross picket lines or by reason of proviso in each of their contracts with the Union to the same effect, notwithstanding the interchange contracts and arrangements plaintiff had with such other truck lines. As a result, and over night, plaintiff suffered losses in business revenues of some 90 percent; his Dallas office receipts on September 16 being $1,650; the next day, following above labor activity, receipts of $150.

The final order of injunction (here appealed from) carried in substance the following recitals: (1) That on the occasion in question no bona fide labor dispute existed between plaintiff and labor defendants; (2) labor and truck line defendants were enjoined from refusing to handle plaintiff's freight and ordered to resume business relations with plaintiff in accepting and delivering freight, notwithstanding provision of contracts between Union and said truck lines; (3) labor union and ex-employees were enjoined (a) from establishing a picket line at plaintiff's place of business or picketing defendant truck lines for purpose of publicizing plaintiff as unfair, and (b) similarly enjoining them from telephoning or informing truck line defendants or customers that plaintiff is "unfair" or informing them that a strike existed among employees of plaintiff; (4) labor union defendants and ex-employees were enjoined from interfering with business relations or contracts between plaintiff and truck line defendants or customers so as to terminate such contracts or business relations; these truck lines being likewise enjoined from terminating contracts and business relations with plaintiff on account of above mentioned labor troubles; (5) labor union defendants and ex-employees were enjoined from threatening and intimidating or coercing Liquid Carbonic Company or other shipping or receiving customers not to do business with plaintiff, or from informing said customers a strike existed among employees at plaintiff's Dallas terminal, or that plaintiff was unfair or on the unfair list.

Recent legislation (both Federal and State) with respect to labor organizations and affairs, appears to have rendered moot to some extent the issues raised on this appeal. See Labor Management Relations (Taft-Hartley) Act, 80th Congress, 1947, 29 U.S.C.A. § 141 et seq., and the Nine Acts, Texas Legislature, 50th Session, 1947, now appearing as Art. 5154 a–f, and Art. 7428, as amended, Vernon's Annotated Civil Statutes. Likewise the similarity in subject matter in the instant suit and Turner v. Zanes, Tex.Civ.App., 206 S.W.2d 144 (by this court), is such as that both appeals are based upon identical points of error. The Turner-Zanes case is deemed controlling, therefore, of several points herein raised; but to the extent that this record differs from the Turner appeal, appellants here are entitled to conclusions of fact and law, viz.:

First: While every presumption will be indulged in favor of the trial court's finding, this record, we think, clearly discloses the existence of a labor dispute between appellee and eleven of his employees; if not that, then surely there was a pending dispute with defendant Union as an adversary party. While there is a conflict of testimony as to whether Daniel, an employee, had complained to Mr. Robinson or his Dallas foreman on behalf of the group, the whole record is suggestive of their dis-

---

[2] Of these, Merchants' Fast Motor Lines and Brown Express had no contract with the Union; and whether interchange of freight ceased between the other four truck lines and plaintiff on account of strike, the record is not clear.

satisfaction in the matter of appellee's working conditions; as, for example: Their authorization of Dickson in the matter of collective bargaining; the latter's discussion with Robinson of a union contract; they walking off the job and joining a picket line, carrying banners, all of which sufficiently establishing the activity as a labor dispute within the meaning of Art. 1621b, sec. 3, Vernon's Ann. Penal Code. But if we be mistaken in our conclusion that there was no employer-employee dispute, then unquestionably the negotiations between appellant Union and the company (attempted or pending), constituted such a dispute and an adequate basis for the ensuing strike and picketing. "A state cannot exclude workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly employed by him. * * * The right of free communication cannot therefore be mutilated by denying it to workers, in a dispute with an employer, *even though they are not in his employ.*" (Emhasis ours.) A. F. of L. v. Swing, 312 U.S. 321, 61 S.Ct. 568, 570, 85 L.Ed. 855.

■ Second: The judgment further restrained all picketing of plaintiff's premises "for purpose of publicizing the plaintiff as unfair" to defendant Union or as on the "unfair" list, though their conduct was otherwise peaceful. We have seen that such picketing has constitutional protection as a form of free speech (See recent U. S. Supreme Court decisions, cited in the Turner appeal). Also that in connection with picketing, a reference to the employer as unfair or on the unfair list is not to "falsify facts." Cafeteria Employees Union, Local 302 v. Angelos, 320 U.S. 293, 64 S.Ct. 126, 88 L.Ed. 58; these terms in an industrial dispute being merely expressions of opinion relative to the labor policy of a particular employer. Teller, Vol. 1, Sec. 152; Steffes v. Motion Pictures, etc. 136 Minn. 200, 161 N.W. 524. The trial court erred, therefore, in wholly restraining appellant's method of picketing the premises of plaintiff, likewise in forbidding free communication of such fact to the public or parties concerned; for we have already held that a condition of strike was then subsisting between the parties. "Publicizing the facts of a labor dispute in a peaceful way through appropriate means, whether by pamphlet, by word of mouth or by banner, must now be regarded as within that liberty of communication which is secured to every person by the Fourteenth Amendement against abridgement by a state." Carlson v. California, 310 U.S. 106, 60 S.Ct. 746, 749, 84 L.Ed. 1104.

Third: The injunction further required truck line defendants to resume commercial relations with plaintiff by accepting and handling all freight tendered in usual course of business, notwithstanding a proviso of appellant Union's contract with at least sixteen of these truck lines, reading: "The employer shall not request nor instruct any employee to go through a picket line of a union, nor to handle unfair goods declared so by the unions signed to this agreement." Defendant motor lines have not appealed from this phase of the judgment, thus making the particular restraint a final order. A brief discussion of these court recitals is proper, however, defendant Union being a party to the contract mentioned in said judgment.

■ On notice of the strike, these sixteen truck lines immediately terminated all business relations with plaintiff company; numerous of the truck line officials testifying that they considered themselves bound to do so under the contract. The result was an almost total stoppage of plaintiff's business in interchange of freight and heavy decrease in cash receipts the following day. The trial court could reasonably have found from the foregoing facts that the practical construction placed on the quoted proviso by the parties, obliged each "employer" to cease business relations with any concern which defendant local was attempting to unionize. So viewed by the court, the contract simply became the predicate for a secondary boycott by the parties thereto against any nonsubscribing employer, the boycott to become actual upon notice of the existence of a strike, as in the instant situation; such an understand-

ing between a trade union and business organizations being obviously in violation of our laws against trusts, monopolies and conspiracies in restraint of trade. For while it may be true that the proviso in question was prima facie in aid of the Union's right to collectively bargain, the immediate effect of its operation as applied to plaintiff ·was a virtual boycott and the creation and carrying out of restrictions against him in the free. pursuit of a lawful business. Arts. 7426 to 7429, Vernon's Annotated Statutes, and Arts. 1632-1634, Vernon's Ann. Penal Code; Webb v. Cooks', Waiters' and Waitresses' Union, Tex.Civ.App., 205 S.W. 465; Borden Co. c. Local No. 133 of Teamsters, etc., Tex.Civ.App., 152 S.W.2d 828. See also Art. 7437, reading: "Any contract or agreement in violation of any provision of this subdivision shall be absolutely void and not enforcible either in law or equity."

For a discussion of other points, the parties are referred to the companion case of Turner v. Zanes, supra, which opinion is deemed controlling thereof.

All restraint imposed by judgment, paragraphs 1, 2, 4 and 5, in nature of secondary boycott, involving truck line defendants, is hereby affirmed. In other respects the judgment is reversed and here rendered; labor defendants being entitled to the same rights of publicity and picketing in connection with their pending labor dispute as were accorded in the Turner-Zanes appeal [206 S.W.2d 152], viz.: "Nothing herein shall be construed to limit the right of C. B. Kepke and the Labor Union Defendants from publicizing the controversy with plaintiffs in an accurate, peaceful and truthful manner, without threats, coercion or intimidation, actual or implied, against any of the parties herein mentioned."

Affirmed in part; otherwise reversed and rendered. All costs of appeal are taxed against appellee.

LOONEY, J., not participating.

On Motions for Rehearing.

YOUNG, Justice.

Appellants point out and correctly, that appellee was not deprived of all facilities for inter-line connections with other carriers; in our opinion, however, not relieving the employer-union agreement in question of its aspect of illegality under our State Anti-Trust Laws.

After full consideration the motions of both appellants and appellee for rehearing are overruled.