## CARLSON v. CALIFORNIA.

No. 667.   Argued February 29, March 1, 1940.—Decided April 22, 1940.

---

*Mr. Lee Pressman,* with whom *Messrs. Joseph Kovner* and *Anthony Wayne Smith* were on the brief, for appellant.

*Mr. Laurence W. Carr, pro hac vice,* by special leave of Court, for appellee.

By leave of Court, *Mr. Osmond K. Fraenkel* filed a brief on behalf of the American Civil Liberties Union, as *amicus curiae,* urging reversal.

Mr. Justice Murphy delivered the opinion of the Court.

This case presents the question whether regulations embodied in a municipal ordinance abridge the freedom of speech or of the press secured against state invasion by the Fourteenth Amendment.[1]

Section 2 of an ordinance of Shasta County, California, provides:

"It shall be unlawful for any person, in or upon any public street, highway, sidewalk, alley or other public place in the County of Shasta, State of California, to loiter in front of, or in the vicinity of, or to picket in front of, or in the vicinity of, or to carry, show or display any banner, transparency, badge or sign in front of, or in the vicinity of, any works, or factory, or any place of business or employment, for the purpose of inducing or influencing, or attempting to induce or influence, any person to refrain from entering any such works, or factory, or place of business, or employment, or for the purpose of inducing or influencing, or attempting to induce or influence, any person to refrain from purchasing or using any goods, wares, merchandise, or other articles, manufactured, made or kept for sale therein, or for the purpose of inducing or influencing, or attempting to induce or influence, any person to refrain from doing or performing any service or labor in any works, factory, place of business or employment, or for the purpose of intimidating, threatening or coercing, or attempting to intimidate, threaten or coerce any person who is performing, seeking or obtaining service or labor in any such works, factory, place of business or employment."[2]

---

[1] "It is also well settled that municipal ordinances adopted under state authority constitute state action and are within the prohibition of the amendment." *Lovell* v. *Griffin*, 303 U. S. 444, 450; *Schneider* v. *State*, 308 U. S. 147.

[2] Section 1 declares that it shall be unlawful for any person "to make any loud or unusual noise, or to speak in a loud or unusual

Appellant was one of a group of twenty-nine men engaged in "picketing" on U. S. Highway 99 in front of the Delta Tunnel Project in Shasta County. "The picketing consisted of walking [on the edge of the highway nearest the project] a distance of 50 to 100 feet in a general northerly direction, then turning around and retracing steps and continuing as before . . . all of the walking in connection with the picketing . . . was done off the paved portion of the highway and on the gravelled portion of the right-of-way, that is, on public property." Some of the pickets carried signs, similar to those described in the margin,[3] in such a manner that workers on the project and persons going along the highway in either direction could read them. The sign carried by appellant bore the legend: "This job is unfair to CIO." These activities occurred between the hours of 7:30 and 9:00 a. m. During this period vehicles and persons passed freely without any molestation or interference through the picket line from the highway to the project and from the project to the highway, and the traffic of persons and automobiles along the highway was not obstructed. Appellant did not threaten or intimidate or coerce anyone, did not make any loud noises at any time, and was peaceful and orderly in his demeanor. The

---

tone, or to cry out or proclaim, for the purposes of inducing or influencing, or attempting to induce or influence, any person" to refrain from entering, or purchasing merchandise from, or performing any service in, any place of business. The State did not charge that this section was violated.

[3] Four signs were admitted in evidence as typical. They were of white card board, approximately 14 x 22 inches in size, and were tacked upon a stick some 34 inches long, 1½ inches wide and ¼ inch thick. Black painted letters, ranging in size from 1½ inches to 5 inches in height, spelled out one of the following legends on each sign: "Don't be a scab," "Shasta Tunnel and Construction Workers Local #260," "CIO Picket Line," "This job unfair to CIO."

pickets committed no acts of violence, and there was no breach of the peace.

The county officers arrested appellant and charged that he did "loiter, picket, and display signs and banners in a public place and in and upon a public highway in front of, and in the vicinity of the Delta Tunnel Project . . . for the purpose of inducing and influencing persons to refrain from doing and performing services and labor" at the project in violation of the ordinance. The Justice's Court of Township Number Nine found him "guilty of violating the Shasta County Anti-Picketing Law," rendered judgment accordingly, and imposed sentence. The Superior Court of Shasta County affirmed the judgment. That court upheld the ordinance, over appellant's claim of unconstitutionality, on the authority of a prior decision.[4] The case comes here on appeal.[5]

Our decision in *Thornhill* v. *Alabama, ante,* p. 88, goes far toward settling the issues presented here. Under that decision, § 2 of the ordinance in question is to be judged upon its face.[6]

Section 2 on its face declares it unlawful for any person to carry or display any sign or banner or badge in the vicinity of any place of business for the purpose of inducing or attempting to induce any person to refrain from purchasing merchandise or performing services or labor. It likewise makes it unlawful for any person to loiter or

---

[4] Appellant, prior to trial, moved to dismiss the complaint upon a number of grounds, among which was the contention that § 2 of the ordinance violated the Fourteenth Amendment in abridging his "freedom of speech, freedom of press, and freedom of assembly." The same objections were raised by demurrer, by further motions to dismiss the complaint, and by motion in arrest of judgment.

[5] There is no further appeal allowed in the state courts.

[6] We do not decide whether, in view of the separability provision (§ 3), the state courts might cull out from § 2 particular clauses which, standing alone, could be sustained.

picket in the vicinity of any place of business for a similar purpose. The terms "loiter" and "picket" are not defined either in the ordinance or in authoritative state decisions. Therefore, they must be judged as covering all the activities embraced by the prohibition against the carrying of signs in the vicinity of a labor dispute for the purpose mentioned.[7] The ordinance does not proscribe the carrying of signs in other places or for the purpose of inducing or attempting to induce others to adopt courses of action not related to labor disputes. It contains no exceptions with respect to the truthfulness and restraint of the information conveyed or the number of persons engaged in the activity. It is true that the ordinance requires proof of a purpose to persuade others not to buy merchandise or perform services. Such a purpose could be found in the case of nearly every person engaged in publicizing the facts of a labor dispute; every employee or member of a union who engaged in such activity in the vicinity of a place of business could be found desirous of accomplishing such objectives; disinterested persons (who might be hired to carry signs) appear to be a possible, but unlikely, exception.[8] In brief, the ordinance does not regulate all carrying of signs, but, on the contrary, proscribes the carrying of signs only if by persons directly interested who approach the vicinity of a labor dispute to convey information about the dispute.

The sweeping and inexact terms of the ordinance disclose the threat to freedom of speech inherent in its existence. It cannot be thought to differ in any material respect from the statute held void in *Thornhill's* case. The carrying of signs and banners, no less than the raising of a flag, is a natural and appropriate means of convey-

---

[7] See *Thornhill* v. *Alabama, ante,* p. 101, n. 18.

[8] Even they would be covered under a construction making purpose synonymous with intent. See *Thornhill* v. *Alabama, ante,* p. 100, n. 17.

ing information on matters of public concern. *Stromberg* v. *California*, 283 U. S. 359. For the reasons set forth in our opinion in *Thornhill* v. *Alabama, supra,* publicizing the facts of a labor dispute in a peaceful way through appropriate means, whether by pamphlet, by word of mouth or by banner, must now be regarded as within that liberty of communication which is secured to every person by the Fourteenth Amendment against abridgment by a State.

The power and duty of the State to take adequate steps to preserve the peace and protect the privacy, the lives, and the property of its residents cannot be doubted. But the ordinance in question here abridges liberty of discussion under circumstances presenting no clear and present danger of substantive evils within the allowable area of state control.

*Reversed.*

MR. JUSTICE MCREYNOLDS is of opinion that the judgment below should be affirmed.