COMMONWEALTH *vs.* GEORGE PASCONE.

SAME *vs.* SAME.

Suffolk.     March 3, 1941. — April 5, 1941.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Constitutional Law*, Freedom of speech, Freedom of the press, Police power, Due process of law, Freedom of religion, Public place. *Way*, Public: display of placard, distribution and sale of merchandise. *Municipal Corporations*, By-laws and ordinances. *Boston*. *Placard*. *Hawkers and Pedlers*. *Practice, Civil*, Exceptions: what questions open.

An ordinance that no pedestrian in any street "shall . . . carry and display any showcard, placard, or sign, except in accordance with a permit from the commissioner of public works," since it was directed against the display itself and not against any quality in it or any circumstances connected with it hostile to the public interest, was unconstitutional on its face as an unwarranted interference with freedom of speech and of the press in violation of § 1 of art. 14 of the Amendments to the Federal Constitution.

St. 1907, c. 584, as amended, prohibiting the use or occupation of the public streets of Boston for the purchase, sale, storage or display of articles without a license from the street commissioners, with certain exceptions, is aimed at the proper regulation of the use of such streets for business purposes and on its face is constitutional under the police power; it is not aimed at the dissemination of information and so far as it affects the sale or display of literature is not unconstitutional as an unwarranted interference with freedom of speech and of the press.

No automatic exemption from the reasonable requirements of St. 1907, c. 584, as amended, validly enacted under the police power, arises on constitutional grounds from the fact that merchandise sold as described therein consists of pamphlets of a religious nature.

After a conviction following a trial of a complaint on the merits, exceptions only to the denial of a motion to dismiss the complaint grounded on its legal insufficiency and unconstitutionality of the statute on which it was based, presented no question as to the sufficiency of the proof.

Section 17 of G. L. (Ter. Ed.) c. 101, permitting hawkers and pedlers to sell without a license newspapers, religious publications, and certain other articles, refers to hawkers' and pedlers' licenses and not to the licenses for the use of specified parts of streets in Boston required by St. 1907, c. 584, as amended.

Two COMPLAINTS, received and sworn to in the Municipal Court of the City of Boston on May 20, 1940.

On appeal to the Superior Court, the complaints were tried together before *Williams*, J.

*G. E. Lodgen*, (*J. Sugarman* with him,) for the defendant.

*W. J. Foley*, District Attorney, & *F. J. Hickey*, Assistant District Attorney, for the Commonwealth, submitted a brief.

QUA, J. The complaint in the first case charges the defendant with carrying and displaying a certain showcard while on foot on Washington Street in Boston without a permit from the commissioner of public works of the city in violation of c. 39, § 37, of the city ordinances.

The complaint in the second case charges that the defendant "did use and occupy" a part of Washington Street "for the purchase, sale, storage and display . . . of certain merchandise, to wit, books and pamphlets," not being materials or appliances used or to be used for public purposes or for building operations, in violation of St. 1907, c. 584, as amended.

At the trial together of the two complaints in the Superior Court on appeal the Commonwealth introduced evidence that near the corner of Washington and Court streets, in Boston, the defendant had been observed on foot, "carrying a sack of literature in the form of pamphlets or booklets, slung over his shoulder and carrying a placard"; that the defendant sold one of the publications entitled "Consolation" to a passerby for money; and that the defendant admitted that he had no license to sell the pamphlets or booklets and that he had no permit from the commissioner of public works of the city to carry and display a placard in the streets. The placard was two feet by one foot in size. On one side was printed, "Consolation dares to print the truth exposing hypocritical rackets 5c per copy," and on the other side was printed, "Exposing unAmerican activi-

ties." The defendant testified that he was a member of "Jehovah's Witnesses," ordained by God as a minister; that on this earth he was "a hod carrier"; that he was distributing pamphlets entitled "Consolation," "The Watchtower," and "Refugees" by asking five cents for each publication but giving it free to a person unable or unwilling to pay upon the promise that the person would read it; that he distributed this literature for the purpose of promulgating the religious beliefs of "Jehovah's Witnesses" and "Spreading the word of Almighty God"; and that he carried the two-sided placard for assistance in distributing the publications and alternately turned it from one side to the other.

At the close of the defendant's testimony he presented a motion applicable to both cases entitled "Motion to Dismiss," wherein he moved that the complaints be dismissed and that he be discharged for reasons set forth as follows: "1. The said complaints are invalid and do not state facts sufficient to constitute an offence under the law; and 2. That the ordinances and statutes in question under which the said complaints have been brought have no application to the sale, distribution, or display of religious literature and material, and that so far as said ordinances and statutes purport to include the sale, distribution, or display of religious literature and material they are invalid, void, and unconstitutional in that they deprive the defendant of the rights guaranteed under the First and Fourteenth amendments of the Constitution of the United States."

We deal with the two cases separately.

1. The Commonwealth should have seen to it that at the trial in the Superior Court the ordinance upon which the prosecution in the first case was based was introduced in evidence and became part of the record. *Rogers* v. *Abbott*, 248 Mass. 220, 224. *Commonwealth* v. *Kimball*, 299 Mass. 353, 355. But as we think that the prosecution must fail in this case in any event, we may assume that the ordinance reads as stated in the briefs both of the Commonwealth and of the defendant. The material part is this, "No person shall, while on foot in any street, carry and display any

showcard, placard, or sign, except in accordance with a permit from the commissioner of public works . . . ." The defendant's motion to dismiss raises the question whether the ordinance on its face is in violation of § 1 of the Fourteenth Amendment to the Constitution of the United States.

Notwithstanding the former decisions of this court in *Commonwealth* v. *Haffer*, 279 Mass. 73, and *Commonwealth* v. *Nichols*, 301 Mass. 584, we feel that recent decisions of the Supreme Court of the United States require the conclusion that this ordinance is unconstitutional as an unwarranted interference with the freedom of speech and of the press. We think the case is covered in principle by the decisions in *Schneider* v. *State*, 308 U. S. 147, *Thornhill* v. *Alabama*, 310 U. S. 88, and *Carlson* v. *California*, 310 U. S. 106. We are bound by these decisions. Whatever may have been the purpose in passing this ordinance, it is not by its terms aimed against obstructions to traffic, or against danger or annoyance to travellers. It forbids the display without a permit of any showcard, placard or sign, however innocent may be the legend it bears. The ordinance is directed against the display itself and not against any quality in it or any circumstances connected with it hostile to the public interest. In *Commonwealth* v. *Anderson, ante,* 370, we held in accordance with our understanding of the Federal decisions that this ordinance was unconstitutional as applied to the defendant in that case. We now hold that it is unconstitutional on its face. *Thornhill* v. *Alabama*, 310 U. S. 88, 97, 98, 101. *Carlson* v. *California*, 310 U. S. 106, 111.

2. The statute involved in the second case consists of nine sections containing the substance of the act, a tenth section (as amended by St. 1909, c. 329) imposing a penalty upon any person who "uses or occupies a part of a public street in the city of Boston, otherwise than according to the provisions of this act, for the purchase, sale, storage or display of merchandise or other articles," with an exception not here material, and an eleventh section repealing previous enactments. The first nine sections authorize the street commissioners to issue licenses "for the use of speci-

fied parts of public streets in said city for the storage and sale of merchandise" (§ 1) and require the applicant for a license to "describe accurately in writing, by plan or otherwise, the location, the shape and the dimensions of the space which he desires to occupy, the movable structures which he proposes to use, and the kinds of merchandise which he wishes to store and to sell" (§ 2). The applicant must secure the consent of the owner of the premises "in front of which he desires to carry on business" (§ 2). The police commissioner is to examine "the location for which the license is asked, with particular reference to the effect of its use as desired upon the free passage of vehicles and of foot passengers and upon the maintenance of public order." He is to certify his approval or disapproval, "or his approval conditional upon amendments to be made in the application as affecting the precise location, its area or the kinds of merchandise to be stored and sold thereon" (§ 3). The license may be for one or more week days in each week, for specified hours, and for any period not exceeding twelve months, and may be suspended or revoked for any reason which the street commissioners consider sufficient (§ 5). The board (of street commissioners) is to charge a fee for each license of not less than $5 nor more than $100 "according to its estimate of the value of the privilege granted." It may collect an additional charge as rent whenever the licensee is not the principal tenant of the ground floor of the premises in front of which "the location" is granted or whenever such tenant is the licensee but carries on "in the location for which the license is issued a business which in the manner of its conduct or in the character of the merchandise which is sold differs materially from the business in which he is mainly engaged at that place" (§ 6). Places within the defined limits of Faneuil Hall Market and other markets occupied for the sale of provisions from wagons or other vehicles are excepted from the requirements of the act on certain conditions (§ 8, as amended by St. 1908, c. 519, § 1, and St. 1937, c. 90, § 1). The police commissioner may designate certain streets, parts of streets, or sections

of the city "wherein, and not elsewhere in the city" hawkers or pedlers may "stop or stand for the purpose of selling merchandise" on specified days and within specified hours without the license provided for in the act (§ 9).

In our opinion this act is constitutional. It must be read and construed as a whole. It is not directed against the dissemination of information or the distribution of printed matter by persons simply going about from place to place in the streets. It is directed to the regulation of persons who seek to establish themselves for business purposes in some one place in the street for an appreciable period of time, thus appropriating to their own use and profit a part of the space dedicated and prepared at public expense for purposes of public travel. Occupation in this way of portions of public streets and sidewalks by tradesmen of various sorts is a common and well known incident of city life. The necessity that it be regulated in order to prevent it from becoming a nuisance, particularly in a city like Boston containing many narrow and highly congested streets, seems to us obvious, and the power to regulate necessarily follows as a part of the police power of the State. *Commonwealth* v. *Ellis*, 158 Mass. 555. *Commonwealth* v. *Morrison*, 197 Mass. 199. *Commonwealth* v. *Fox*, 218 Mass. 498, 501. *Opinion of the Justices*, 251 Mass. 569, 595. *Commonwealth* v. *Nichols*, 301 Mass. 584, and cases cited. Section 9 of this statute was held constitutional in *Commonwealth* v. *Fox*, 218 Mass. 498. No automatic exemption from the requirements of the statute arises on constitutional grounds from the fact that the merchandise sold consisted of pamphlets of a religious nature. Neither the press nor religion, fundamental as both are in the political and social polity of this country, can claim in all relations, at all times, and in all places absolute freedom from reasonable regulation. One could not claim a constitutional right to continued, exclusive occupation of a particular area of a public street for the purpose of maintaining there a book store for the sale of religious books. The infringement upon the public right is the same whether the articles sold are religious

pamphlets or other portable articles of merchandise. The statute is not a general and undiscriminating attack upon a commonly harmless means of communicating ideas and therefore an unnecessary and unwarranted interference with a constitutionally protected liberty, as the ordinance in the first case might be thought to be. The statute aims at a particular evil and endeavors to remedy it by specific means appropriate to that end. It goes no further than is required to curb the evil. If in some few instances it may affect in some degree the press and religion, its interference with them is incidental only and no greater than or different in quality from that to which constitutional liberties are frequently and unavoidably subject from necessary police regulations. *Commonwealth* v. *Plaisted,* 148 Mass. 375, 381. *Commonwealth* v. *Davis,* 162 Mass. 510, affirmed, *sub nomine Davis* v. *Massachusetts,* 167 U. S. 43. *Commonwealth* v. *Green,* 268 Mass. 585, 586. *Commonwealth* v. *Anderson,* 272 Mass. 100, 106. See *Reynolds* v. *United States,* 98 U. S. 145, 160–167; *Davis* v. *Beason,* 133 U. S. 333. We see nothing in conflict with what is here decided in the recent decisions of the Supreme Court of the United States upon which the defendant relies. *Lovell* v. *Griffin,* 303 U. S. 444. *Hague* v. *Committee for Industrial Organization,* 307 U. S. 496. *Schneider* v. *State,* 308 U. S. 147. *Thornhill* v. *Alabama,* 310 U. S. 88. *Carlson* v. *California,* 310 U. S. 106. *Cantwell* v. *Connecticut,* 310 U. S. 296.

Inasmuch as the defendant, seemingly by choice, has confined his exceptions to the denial of his motion to dismiss, which attacks only the legal sufficiency of the complaint and the constitutionality of the statute, no issue is raised on this record as to whether the proof supports the charge (see *Guidi* v. *Great Barrington,* 272 Mass. 577, 579), nor would we be justified in assuming that all the evidence on that issue is included in the bill of exceptions. We may add, however, that G. L. (Ter. Ed.) c. 101, § 17, permitting hawkers and pedlers to sell without a license newspapers, religious publications, and certain other articles refers to hawkers and pedlers' licenses and not to the licenses for the use of specified parts of streets in Boston required by

St. 1907, c. 584, as amended, upon which this complaint is based.

We have dealt with all matters presented in this second case and with all matters argued.

In the first case the exceptions are sustained, the judgment is reversed, and judgment is to be entered discharging the defendant. In the second case the exceptions are overruled.

*So ordered.*