## UNITED STATES v. PETRILLO.

### No. 46 Cr. 357.

District Court, N. D. Illinois, E. D.

Dec. 2, 1946.

Theron L. Caudle, Asst. Atty. Gen., John S. Pratt and Robert L. Stern, Sp. Assts. to Atty. Gen., and Andrew Oehmann and Irvin Goldstein, Sp. Assts., Dept. of Justice, both of Washington, D. C., for the Government.

Joseph A. Padway and Henry Kaiser, both of Washington, D. C., Henry A. Friedman, of New York City, and David A. Katz, of Chicago, Ill., for defendant.

LA BUY, District Judge.

The information filed herein charges a violation of Section 506 of the Federal Communications Act of 1934, as amended, 47 U.S.C.A. § 506. It charges that the licensee of radio station WAAF, located in Chicago, Illinois, for several years to on or about May 28, 1946, employed certain persons who were sufficient and adequate in number to perform all of the actual services needed by said licensee in connection with the operation of its radio broadcasting facilities; that notwithstanding the premises, the defendant, James C. Petrillo, President of the Chicago Federation of Musicians, on or about May 28, 1946, at Chicago, Illinois, wilfully, by the use of force, intimidation, duress and by the use of other means, did attempt to coerce, compel and constrain said licensee to employ and agree to employ in connection with the conduct of its radio broadcasting business, three additional persons not needed by said licensee to perform actual services, in the following manner, to-wit:

(1) By directing and causing three musicians, members of the Chicago Federation of Musicians, theretofore employed by the said licensee in connection with the conduct of its broadcasting business, to discontinue their employment with said licensee;

(2) By directing and causing said three employees and other persons, members of the Chicago Federation of Musicians, not to accept employment by said licensee; and

(3) By placing and causing to be placed a person as a picket in front of the place of business of said licensee.

The information, therefore charges that coercive practices employed by the defendant were only with reference to subsection (a) (1) of Section 506. The pertinent portion of the section is as follows:

"Sec. 506. (a) It shall be unlawful, by the use [of] express or implied threat of the use of force, violence, intimidation, or duress, or by the use of express or implied threat of the use of other means, to coerce, compel or constrain or attempt to coerce, compel, or constrain a licensee—

"(1) to employ or agree to employ, in connection with the conduct of the broadcasting business of such licensee, any person or persons in excess of the number of employees needed by such licensee to perform actual services.

\* \* \* \* \* \*

"(c) The provisions of subsection (a) or (b) of this section shall not be held to make unlawful the enforcement or attempted enforcement, by means lawfully employed, of any contract right heretofore or hereafter existing or of any legal obligation heretofore or hereafter incurred or assumed.

"(d) Whoever willfully violates any provision of subsection (a) or (b) of this section shall, upon conviction thereof, be punished by imprisonment for not more than

one year or by a fine of not more than $1,000, or both."

The defendant has moved to dismiss the information on the ground that Section 506 of Title V of the Communication Act, added thereto by an Act of 1946, 60 Stat. 89, contravenes the First, Fifth, Tenth and Thirteenth Amendments to the Constitution of the United States.

The court considers first the contention of defendant that Section 506 violates the due process of law protected under the Fifth Amendment in that it is so framed as to create indefiniteness and uncertainty in the definition of a criminal offense. The portion of the section here involved imposes a criminal penalty upon the use or threat to use pressure upon a licensed operator of a radio station "to employ or agree to employ, in connection with the conduct of the broadcasting business of such licensee, any person or persons *in excess of the number of employees needed by* such licensee to perform actual services * * *." There is no means, or guide, or standard by which the defendant may know "the number of employees needed." This is established by the licensee without prior knowledge upon the part of the person subjected to prosecution for violation of the section.

Such a provision in a criminal statute violates the established principle that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Connally v. General Construction Co., 1926, 269 U.S. 385, 46 S.Ct. 126, 127, 70 L.Ed. 322. A similar statement was more recently made in Lanzetta v. New Jersey, 1939, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888, and a detailed analysis of other cases is found in 83 L.Ed., pages 893–921, Annotation.

The word "wilfully" used in paragraph (d) of this section does not make definite the undefined offense. This view is not contradictory to that of Mr. Justice Douglas in Screws v. United States, 1945, 325 U.S. 91, 104, 65 S.Ct. 1031, 1033, 89 L.Ed. 1495, for he stated:

"* * * But where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law. * * *."

In that case defendants had knowledge they were committing an unlawful act, but under Section 506 here involved defendant cannot know whether he is doing that which the statute prohibits or is acting lawfully. This lack of knowledge is not due to ignorance as to existence of the statute. His guilt or innocence is subject wholly to the whim of others, and his position is that of the defendants in United States v. Local 807 of Teamsters, 1942, 315 U.S. 521, 532, 62 S.Ct. 642, 646, 86 L.Ed. 1004, regarding whom the United States Supreme Court said:

"The state of mind of the truck owners cannot be decisive of the guilt of these defendants."

Life and liberty may not be imperilled by or be subject to such a frail and uncertain device as one man's opinion against another's. The will of an individual to make an act a crime or not, depending upon his own judgment, is abhorrent to our form of government.

It is the court's opinion, therefore, that subsection (1) of Section 506(a) is patently defective in its failure to define with reasonable certainty the crime charged.

There are, however, other fundamental deficiencies in the act which must be considered.

Congress has plainly stated in this statute that if a licensee can be persuaded by means which place no constraint or coercion upon the licensee then the acts of the parties and the results accomplished are not prohibited. It is legal and not prohibited by any law for the licensee to employ more persons than it needed, without any agreement with or, in fact, against the desires of its employees or its representatives. The employment of more persons than are needed by the licensee is not condemned in this legislation; such act is not defined to be an evil which must be remedied; such conduct is not denounced or proclaimed to,

be illegal in any sense through all the wording of the statute. The only time it becomes a crime under this statute is when the employer refuses to agree. If an employee persists in trying to demonstrate his demand to other employees by means of a picket it becomes a crime. But if the employer agrees to hire fifty more employees than are needed, it is not a criminal offense because of the decision of the employer.

The information charges that one of the means employed by defendant to enforce his request that more persons be employed by the licensee was the "placing and causing to be placed a person as a picket in front of the place of business of said licensee." Can the hiring of additional employees which can be done legally by agreement of the licensee and the union, or by the licensee alone, be constitutionally denounced as illegal when done by the right of free speech as manifested by peaceful picketing?

■ There is in this case no charge of violence in picketing and therefore the placing of a picket must be regarded by this court as peaceful picketing. The Supreme Court of the United States in Carlson v. California, 1940, 310 U.S. 106, 60 S.Ct. 746, 749, 84 L.Ed. 1104 said:

"* * * publicizing the facts of a labor dispute in a peaceful way through appropriate means, whether by pamphlet, by word of mouth or by banner, must now be regarded as within that liberty of communication which is secured to every person by the Fourteenth Amendment against abridgment by a state."

■ It is this fundamental right that is here challenged as an unlawful means to procure the accomplishment of an admittedly legal objective. The court is of the opinion, therefore, that picketing where not accompanied by any force or violence, used merely for the purpose of disseminating the views of defendant and the members of the musicians union is a manifestation of the exercise of the right of free speech and cannot be defined as illegal except under circumstances which warrant a restraint upon freedom of speech or where it is used for some unlawful purpose. It

has been repeatedly and universally held that peaceful picketing is a form of speech and discussion that cannot under the First or Fourteenth Amendments be curtailed by any legislative enactment. Thornhill v. Alabama, 1940, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093.

The information further charges attempts to coerce, compel and constrain employment by means of (1) causing three musicians to discontinue their employment; and (2) causing three musicians not to accept employment by such licensee.

■ There is no doubt as to the constitutional right to discontinue an employment or to refuse such employment. The Thirteenth Amendment accomplishes the purpose "to make labor free, by prohibiting that control by which the personal service of one man is disposed of or coerced for another's benefit, which is the essence of involuntary servitude." Bailey v. Alabama, 1911, 219 U.S. 219, 31 S.Ct. 145, 151, 55 L.Ed. 191. As was said in Carpenters' Union v. Citizens Committee, 1928, 333 Ill. 225, 164 N.E. 393, 398, 63 A.L.R. 157:

"Every man has a right to full freedom in the disposal of his labor, according to his will, and workmen have a right to organize for the purpose of promoting their common welfare by lawful means. They may impose any condition of their employment which they may regard as beneficial to them, and, if not bound by contract, may abandon their employment at any time, either singly or in a body, with or without cause. They have the right to a free and open market in which to dispose of their labor."

Under the Thirteenth Amendment the right of any worker to leave his employment at will or for no reason at all is protected and that right is inviolate. The freedom to quit and refuse to undertake work may as readily be exercised through a group organization as individually.

■ It is further contended the statute violates the Fifth Amendment because it denies equal protection of the laws. It is fully recognized that there is no specific constitutional right to equal protection of

the laws which restricts Congress; but it is true that "discriminatory legislation may be so arbitrary and injurious in character as to violate the due process clause of the Fifth Amendment." Detroit Bank v. United States, 1943, 317 U.S. 329, 63 S.Ct. 297, 301, 87 L.Ed. 304.

The Circuit Court of Appeals for this Circuit recently said:

"Congress may not arbitrarily classify an act as something, the attributes of which it does not partake, Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772, but it may always designate an act as coming within a certain category if in its inherent nature it may reasonably be said to be endowed with the qualities of such category." In re Chicago, R. I. & P. R. Co., 7 Cir., 1937, 90 F.2d 312, 316, certiorari denied Bankers Trust Co. v. Wise, 1937, 302 U.S. 717, 58 S.Ct. 37, 82 L.Ed. 554.

The Fifth Amendment imposes a restriction upon Congress, not specific, but equally effective as to arbitrary classification. The guarantee of peaceful picketing is found in the specific guarantee of freedom of speech by the First Amendment; the guarantee of freedom to withdraw from employment or refuse to accept employment is found in the specific guarantee of the Fifth and Thirteenth Amendments.

This statute could be used to deprive the members of the musicians union of the right to quit work collectively as a means of enforcing their demands with reference to the making of a new contract. All other employees of this country have the right to quit work collectively in order to use their bargaining power; they have the right to strike in order to enforce their demands.

Broadcasting station employees are placed in a class separate and apart from those of all other employees in the United States. The statute does not apply to employees who are engaged in communication such as telephone or telegraph companies, but is definitely limited in its application to broadcasting station employees and no others. As a result the broadcasting station employees are singled out and held to a more rigid rule than any other employees; they have not the same rights and privileges as other employees; they are penalized and prohibited in their contractual negotiations, while other employees enjoy the right which is denied them. A penalty which applies uniquely to broadcasting station employees and no others; a prohibition which relates solely to contracts between these same employees and no others; an inhibition which defines lawful acts as unlawful when applied to these employees and no others cannot survive the constitutional test. This segregation and classification plainly falls within the arbitrary group of class legislation.

The court finds it necessary to hold that the statute here involved in the application here sought to be made violates the Fifth Amendment because of indefiniteness and uncertainty in the definition of a criminal offense; violates the First Amendment by its restriction upon freedom of speech by peaceful picketing; violates the Fifth and Thirteenth Amendment by its restriction upon employment of labor; and violates the Fifth Amendment by an arbitrary classification as between employers and employees and as to other communication industries.

Whether or not the objectives sought to be attained by this statute are or are not economic evils which should be restrained or suppressed are questions not within the province of this court. This court does not hold that Congress is powerless to act or that the declared objectives of this law are beyond the reach of federal legislative control. The only question before the court is the constitutional aspect of this statute as it was written by Congress. On this question the court is of the opinion that this statute is unconstitutional for the reasons above stated.

An order may be entered dismissing the information and discharging the defendant.