## Waring Enterprises, Inc., v. Building & Construction Trades Council et al.

*Harold. C. Edwards* and *E. .C. Marianelli*, for plaintiff.

*Forrest J. Mervine* and *John F. Stine, Jr.,* for defendants.

DAVIS, P. J., July 31, 1953.—In this action plaintiff seeks an injunction to restrain defendants from maintaining a picket or pickets on the sidewalk in front of and along the side of its property situate in the Borough of Delaware Water Gap, Monroe County, Pa., and from distributing and displaying placards representing plaintiff and its business as being unfair to labor.

Plaintiff is a corporation authorized to do business in the Comonwealth of Pennsylvania and is engaged in business in the Borough of Delaware Water Gap where it maintains an office with clerical employes and also is engaged in the operation of a music school, known as "Fred Waring Choral Workshop", for four

or five weeks during the summer. Approximately 100 students attend the music school for a period of one week, then a similar number of students come in each additional week the school is operated. During their attendance at the school food and lodging is furnished by plaintiff in the premises. These premises are situated a short distance from Highway Route 611, known as the Lackawanna Trail. The students come from various parts of the United States. Prior to the opening of the school at this summer session plaintiff decided to make certain alterations and improvements to the building and as a result entered into contracts with plumbers, electricians, painters and general contractors for the performance of the desired work. Several of the contractors at least did not employ union labor. Prior to the opening of the school plaintiff employed defendant Felker and three other young men as laborers at $1 per hour to perform various types of work in getting the school ready for operation. On July 1, 1953, the four young men had been employed more than six weeks. During this time they had been paid for their work but had not been paid extra for hours worked in excess of 40 hours per week. Shortly after noon on July 1st defendant Felker demanded from the foreman in charge that they be paid time and a half for hours worked in excess of 40 each week. The foreman replied that he did not have the authority to grant the request but he would do what he could to help. He then requested the four men to do the work which was quite necessary at the time and they refused. He then told them to leave the premises. On the morning of July 2, 1953, Felker appeared on the sidewalk outside of the plant carrying a sign: "We work like slaves for what, straight time." Later that day a conference was held between an officer of plaintiff and the four men in question. The company paid the four men time and one-half time for hours worked in excess of 40 hours per week and they indicated that everything was satisfactory. Defendant Felker asked

if he could come to work again and the foreman said, "Come in and talk to me about it." None of the young men came back to work. On the same day defendant Felker became a member of Construction and General Laborers Local No. 1174, Allentown, Pa. At 8 a. m. on July 3, 1953, Felker appeared on the sidewalk in front of and along the side of the premises of plaintiff bearing a sign which read, "Unfair to Building & Construction Trades Council, A. F. of L. Stroudsburg", and subsequently there was added to this sign a printed placard bearing the words, "Fred Waring, Inc. Unfair to Labor." This picketing continued generally during working hours until time of hearing. There is no labor contract between Waring Enterprises, Inc., and the Building and Construction Trades Council, A. F. of L. Stroudsburg local, nor does Waring Enterprises, Inc., have a labor contract with its employes.

There is no contention that the acts complained of include duress, violence, breach of the peace or threats thereof.

As a consequence of the picketing certain suppliers of food to be used in the kitchen of the workshop refused to cross the picket line and deliver the product, and plaintiff was required to make arrangements to pick up the deliveries in other places in Delaware Water Gap and bring the food into the premises. Paul Edinger, a contractor who employed union labor in whole or in part, withdrew his workmen from the job.

### Findings of Fact

1. Plaintiff is a corporation organized and existing under the laws of the State of New York and authorized to do business in the Commonwealth of Pennsylvania, and is engaged in business in the Borough of Delaware Water Gap, County of Monroe and State of Pennsylvania, where it maintains an office with clerical employes and also is engaged in the operation of a

music school known as "Fred Waring Choral Workshop".

2. Defendant, Building and Construction Trades Council, A. F. of L. Stroudsburg local, is a labor organization operating in the County of Monroe and State of Pennsylvania.

3. No contractural relationship exists between plaintiff and Building and Construction Trades Council, A. F. of L. Stroudsburg local.

4. No labor dispute exists between plaintiff and any of its employes.

5. There is a labor dispute with reference to the alterations, repairs and construction work.

6. No strike has been called by any of plaintiff's employes.

7. Defendant, Harold E. Felker, has been picketing in front of plaintiff's premises and choral workshop in the Borough of Delaware Water Gap, Monroe County, Pennsylvania, since July 2, 1953, bearing signs upon which is printed or written, "Waring, Inc. Unfair to Labor, Building & Construction Trades Council, A. F. of L. Stroudsburg", also a sign reading, "Fred Waring, Inc. Unfair to Labor, Building & Construction Trades Council A. F. of L. Stroudsburg".

8. Defendant, Harold E. Felker, personally, and on behalf of Building and Construction Trades Council, A. F. of L. Stroudsburg local, has picketed the plaintiff's premises daily during general business hours from July 3, 1953, to date of hearing.

9. The signs carried and displayed by defendant, Harold E. Felker, bore misrepresentations of fact.

10. The picketing on the part of defendants has interfered with and hindered and prevented delivery of food, bread and groceries to plaintiff by suppliers who customarily delivered said articles of food, bread and groceries to plaintiff prior to the picketing.

11. The Fred Waring Choral Workshop has an average of 100 different students each week, coming from all parts of the United States, including Hawaii. From the date the picketing began until completion of the hearing, three separate groups of students were at the premises of plaintiff in Delaware Water Gap, Pa., where the picketing was being carried on.

12. Unlawful acts have been committed and will continue unless restrained.

13. Substantial and irreparable injury will follow unless relief in the form hereafter provided be granted.

14. Greater injury will be inflicted upon plaintiff by the denial of relief than will be inflicted upon defendants by the granting of relief.

15. Plaintiff has no adequate remedy at law.

16. The evidence does not disclose that Thomas R. Joyce, Ralph D. Paul or James Robert have personally participated in the acts complained of.

17. These findings of fact are after service of the bill of complaint and hearing in open court, at which defendants, though given the opportunity, did not present any testimony.

### Discussion

A complaint was filed and hearing held. Defendants did not elect to give testimony when the opportunity was offered. Defendants maintain that a labor dispute existed within the meaning of the term used in the Pennsylvania Labor Anti-Injunction Act in relation to the main business of plaintiff, namely, the "Fred Waring Choral Workshop" and state their contention as follows:

"Here a dispute arose between the plaintiff and four of its employes, one of whom was Harold E. Felker, one of the defendants, regarding the right of such employes to wages of time and one-half on all hours over 40 hours per week. As a result of which dispute the employe, Harold E. Felker, picketed the plant and as

a result of such picketing the employer paid such employes the amount demanded by them, but they were discharged."

We do not so interpret the testimony. It is true a dispute arose over wages and defendant, Felker, and his associates refused to work and were discharged, all this occurring on July 1, 1953. On July 2, 1953, Felker did picket and subsequently, on the same day, a meeting was held between Felker and his associates and plaintiff and the dispute was settled and everything was satisfactory to the men involved. The three associates or Felker never came back to work or requested work. When Felker asked if he might come back to work plaintiff said: "Come and talk to me about it." On the following day Felker elected to picket rather than to discuss work. Plaintiff at no time refused any request made by Felker. Therefore, we fail to see how it can reasonably be said that there was a labor dispute between Felker or his associates and plaintiff in relation to its main business of operating the choral workshop. In regard to the building operations we believe a different situation is presented. After July 3, 1953, plaintiff ascertained that Ralph D. Paul had some connection with the Building and Construction Trades Council, A. F. of L. Stroudsburg local, and an officer of plaintiff went to his place of business to talk to him about the situation. Mr. Paul said the reasons for picketing were to embarrass Mr. Waring and the desire to have only union contractors engaged in the alterations and repair work.

The definition of "labor dispute" under the Labor Injunction Act of June 2, 1937, P. L. 1198, is very broad. Section 3 of the act provides that:

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in a single industry, trade, craft or occupation, or have direct or indirect interest therein, or

who are employes of the same employer, or who are members of the same or an affiliated organization of employers or employes, whether such dispute is—(1) between one or more employers or associations of employers, and one or more employes or associations of employes; (2) between one or more employers or associations of employers, and one or more employers or associations of employers; or (3) between one or more employes or association of employes, and one or more employes or association of employes; or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).

"(b) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it, and if he or it is engaged in the same industry, craft or occupation in which such dispute occurs or has a direct or indirect interest therein, or is a member, officer or agent of any association composed in whole, or in part, of employers or employes engaged in such industry, trade, craft or occupation."

Relief is sought against Building and Construction Trades Council, A. F. of L. Stroudsburg local. It has at least an indirect interest in the painters, plumbers and other crafts involved in this case. Thus, we conclude that in relation to repairs and alteration a labor dispute existed: Peak v. McElroy et al., 33 D. & C. 556; Haibach, etc., et al. v. Carpenters Union, etc., et al., 23 Erie 202.

Defendants contend that because a labor dispute exists the provisions of the Anti-Injunction Act of 1937 apply and the case must be decided upon that basis. However, section 4 of this act, as amended by the Act of June 9, 1939, P. L. 302 provides that the act shall not apply in any case "(b) Where a majority of the

employes have not joined a labor organization . . ." This section controls the present controversy.

In Wortex Mills, Inc., v. Textile Workers Union of America, C. I. O., 369 Pa. 359, 368, 369, there was no labor contract with plaintiff or its employes or no proposed contract had been submitted by defendants for the employes of plaintiff and the court held as follows:

" 'Section 4 of the Labor Anti-Injunction Act of 1937, was amended by the Act of June 9, 1939, providing that the prohibition against injunction "shall not apply in any case . . . (b) Where a majority of the employes have not joined a labor organization . . ." which is the case here; [or] "(c) Where any person, association, employe, labor organization, or any employe, agent, representative, or officer of a labor organization engages in a course of conduct intended or calculated to coerce an employer to commit a violation of the Pennsylvania Labor Relations Act of 1937 or the National Labor Relations Act of 1935".' "

Having decided that this case does not come within the Anti-Injunction Act we pass to the question: Do the facts in the case require injunctive relief? We have in mind that the Supreme Court has recently said that picketing carried on solely for organization purposes, that is, to persuade nonunion employes of an establishment to join the union, is constitutionally protected and, therefore, cannot properly be enjoined: Pappas v. Local Joint Executive Board, 374 Pa. 34, 36.

In Wortex Mills, Inc., v. Textile Workers of America, C. I. O., supra, the court said.

"Picketing is a form of assembly and of speech and consequently comes within the First Amendment to the Constitution of the United States and within Article I, §7 of the Constitution of the Commonwealth of Pennsylvania, both of which guarantee freedom of speech: Thornhill v. Alabama, 310 U. S. 88; Carlson v. California, 310 U. S. 106; Westinghouse Electric Corp. v.

United Electrical Workers, 353 Pa. 446, 46 A. 2d 16; Pennsylvania L. R. Board v. Bartenders Union, 361 Pa. 246, 64 A. 2d 834. But that does not mean that every kind of speech and every kind of picketing is lawful. Freedom of speech is not absolute or unlimited—for example, a man may not slander or libel another; he may not publicly blaspheme the Deity; he may not engage in loud speaking through sound trucks during certain hours or in certain parts of a city; and he may not assemble with others to commit a breach of peace or to incite or to advocate the commission of crimes. Freedom of speech gives no right to intimidation or coercion and no right to damage or injure another's business or property, except where this results indirectly from peaceful and orderly picketing for a purpose which the law regards as legitimate and lawful. . . .

"*Picketing is not beyond the control of a State if the manner in which picketing is conducted or the purpose which it seeks to effectuate gives ground for its disallowance. . . .*

"*A State Court may enjoin unlawful picketing or picketing which is conducted in an unlawful manner or for an unlawful purpose. Picketing, if peaceful, orderly and for a legitimate or lawful purpose, is legal and within the protection of the Constitution. However a State is not required to tolerate in all places and in all circumstances even peaceful picketing by an individual; it is well established that the method or conduct or purpose or objective of the picketing may make even peaceful picketing illegal.*"

One sign bore the legend "Fred Waring, Inc. Unfair to Labor." There is no evidence that such a corporation is in existence. On the other hand, the evidence is uncontradicted that plaintiff owns the property involved and conducts the business maintained therein. The statement is erroneous. Dissemination of false

information is unlawful and in this respect the manner of picketing was unlawful. The other sign bore the legend "Unfair to Building & Construction Trades Council, A. F. of L. Stroudsburg." Coupled with the first sign it well might be inferred that Fred Waring, Inc., was unfair to the trades council. Without the first sign the inference is that the owner of the building, plaintiff, was referred to in this manner.

There is no evidence that plaintiff in any way attempted to prevent its employes from unionizing. To attempt to require it against the wishes of employes would have been illegal. No authority has been submitted to show that the employment of a contractor whose employes are not unionized is improper. We fail to find that plaintiff has done anything that could reasonably be termed unfair under the definition of the term by the Supreme Court.

In Phillips et al. v. United Brotherhood of Carpenters and Joiners of America et al., 362 Pa. 78, 85, the court in a footnote discussed the matter as follows:

"Incidentally it may be noted that the placards bearing the slogan that plaintiffs were 'unfair' to the union were themselves unfair, for they misrepresented the act. Plaintiffs admittedly never made any attempt to interfere with the endeavor of the union to induce their employes to join it. It is true that in Cafeteria Employees Union, Local 302, v. Angelos, 320 U. S. 293, 295, it was said that words like 'unfair' are merely 'loose language . . . they are part of the conventional give-and-take in our economic and political controversies' but it is also true that the word 'unfair' means 'dishonest', 'unjust', 'employing a trick or artifice', and when used by organized labor it means 'unfriendly' to such labor. Certainly the facts here do not justify any such characterization of the attitude of plaintiffs in connection with the events which culminated in the present proceedings."

In the light of this case we find that the display of the sign bearing the word "unfair" was picketing in an unlawful manner and consequently will be restrained.

Ralph D. Paul, who under the evidence has an undefined connection with the Building and Construction Trades Council, A. F. of L. Stroudsburg local, according to plaintiff's witness, said the purposes of the picketing were to embarrass Mr. Waring and the desire to have union contractors engaged. Felker, in response to a question, refused to make any statement regarding the purpose of the picketing. Probably proper picketing for organizational purposes produces some embarrassment to the persons picketed. A desire to have only union contractors engaged is not an unlawful purpose as long as lawful means are used to further the desire. Defendants in disseminating erroneous information were using unlawful means and that we will restrain. We should not go further under the evidence now before the court. Plaintiff bears the burden of proving the unlawful purpose.

Initially, defendants made no demands on plaintiff. Plaintiff went to defendant, Ralph D. Paul, on at least two occasions in an endeavor to settle the matter. Consequently, we conclude plaintiff made a reasonable effort to settle the dispute.

The dissemination of information to the effect that plaintiff is "dishonest", "unjust" and "unfriendly" to the public generally in the Borough of Delaware Water Gap and to 300 students coming from various parts of the United States presents a situation that in our mind cannot be adequately counteracted. To allow this to continue would constitute irreparable damage.

Counsel for defendants moved for a compulsory nonsuit as to defendants, Thomas R. Joyce, Ralph D. Paul and James Robert. There is not sufficient evidence to warrant a preliminary order against these defend-

ants, however, we believe a motion for compulsory nonsuit should only be entertained at the close of plaintiff's testimony on final hearing. An exception is allowed.

## Conclusions of Law

1. There is no labor dispute between plaintiff and its own employes.

2. There is no labor dispute with respect to plaintiff employer's own business.

3. There is no labor dispute with reference to the alterations, repairs and construction work carried on under contract.

4. The legend on the sign "Fred Waring, Inc." or "Waring, Inc." and the legend "unfair" are not truthful statements of the controversy in this case, and will be restrained.

5. Plaintiff has made a reasonable effort to settle the dispute.

6. This case does not come within the Labor Anti-Injunction Act of 1937, as amended.

7. Thomas R. Joyce, Ralph D. Paul and James Robert should have no order entered against them individually, but should remain as defendants pending final hearing.

8. A preliminary injunction should issue restraining defendant, Harold E. Felker, individually, and the Building and Construction Trades Council, A. F. of L. Stroudsburg local, its officers, representatives and agents, from displaying through pickets, advertising or otherwise, publicity that "Fred Waring, Inc." or Waring, Inc." is involved in the controversy, or that plaintiff is "unfair" to labor.

## Decree

And now, July 31, 1953, upon cause having been heard, it is ordered, adjudged and decreed as follows:

1. That a preliminary injunction shall issue enjoining Harold E. Felker, individually, and Building and

Construction Trades Council, A. F. of L. Stroudsburg local, its officers, representatives, agents and members, from displaying through representatives, agents and members, from displaying through pickets, advertising, circulars or otherwise, publicity:

(a) That "Fred Waring, Inc." or "Waring, Inc." is involved in this controversy or is unfair to labor.

(b) That plaintiff, Waring Enterprises, Inc., is unfair to labor.

(c) Or any false statement in relation to the controversy.

2. That this injunction is to take effect upon plaintiff's entering an injunction bond in the sum of $500, said bond to continue until final hearing.