249 F.2d 512
 TRUCK DRIVERS AND HELPERS LOCAL UNION 728 (formerly Local Union 859) OF INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA AFL-CIO, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 No. 13651.
 United States Court of Appeals District of Columbia Circuit.
 Argued September 10, 1957.
 Decided October 28, 1957.
 
 Mr. Herbert S. Thatcher, Washington, D. C., for petitioner.
 Mr. Norton J. Come, Attorney, National Labor Relations Board, with whom Messrs. Stephen Leonard, Associate General Counsel, National Labor Relations Board, and Marcel Mallet-Prevost, Asst. General Counsel, National Labor Relations Board, were on the brief, for respondent.
 Before PRETTYMAN, BAZELON and FAHY, Circuit Judges.
 FAHY, Circuit Judge.
 
 
 1
 This is a sequel to Sales Drivers, etc., v. N. L. R. B., 97 U.S.App.D.C. 173, 229 F.2d 514. There we set aside an order of the Board resulting from its decision that the Union had violated section 8(b) (4) (A) of the Taft-Hartley Act.[1] This is the so-called secondary boycott provision.[2] We remanded the case to the Board for its further consideration, if desired. The Board gave further consideration and issued a Supplemental Decision and Order.[3] The Union now petitions us to set aside this order and the Board requests that we enforce it.
 
 
 2
 Both decisions were reached by the Board on the basis of facts set forth in the same stipulation. But in its previous decision the Board disregarded some of those facts; that is, it held that the picketing constituted a secondary boycott upon consideration of only part of the facts, namely, (1) that the picketing occurred at sites shared by the struck employer, the Campbell Coal Company, and neutral employers, to which sites the pickets followed trucks of the primary employer from its plants to construction jobs of neutral employers where deliveries were made to the latter, with whom the Union had no dispute, and (2) although the picketing at these construction projects did not go beyond the standards of conduct which preserved the validity of the picketing in Moore Dry Dock, 92 N.L.R.B. 547, there was available to the Union in the present case, though not in Moore Dry Dock, the opportunity to picket plants of the primary employer which were not common to sites of secondary employers. Due to this added fact the Board held the conduct invalid, relying upon Washington CocaCola, 107 N.L.R.B. 299. We set aside the Board's order, however, on the ground that this single factor added to those present in Moore Dry Dock was insufficient to make out a violation of section 8(b) (4) (A) which otherwise did not exist.[4]
 
 
 3
 On the remand the Board has relied upon circumstances included in the stipulation of facts which it did not rely upon in its first decision. These are: At each construction site of a neutral employer the Union's agent advised such employer or his representative of the dispute with the primary employer and asked the neutral employer not to accept delivery from the primary employer. If delivery were refused the Union took no further action but if accepted the Union agents picketed the trucks of the primary employer while they were at the site which was common to that of the secondary or neutral employer. In some instances employees of the neutral employer refused to work during the picketing, assigning as their reason the presence of the picket signs, and the Union's agents made no effort to inform these employees that the picketing was not intended as an appeal to them not to work.
 
 
 4
 The Union contends that its picketing was limited to employees of the primary employer and was not intended to induce concerted refusal to work by employees of neutral employers. In its supplemental decision the Board, pointing to the facts above set forth, answers that the Union,
 
 
 5
 "Unable to cause a cessation of business between certain neutral contractors and the primary employer by direct appeals to the former * * * sought to accomplish that objective through a picket line appeal to employees of the secondary employers. Only those employers who refused to accede to the Respondent's [Union's] demands that they cease doing business with Campbell Coal were picketed."
 
 The Board continues:
 
 6
 "When employees of these employers ceased working as a direct result of the picketing the picket line had accomplished the Respondent's previously revealed objective of putting pressure on neutral employers to force them to cease doing business with the primary employer. No attempt was made by the Respondent to inform striking employees that the picket line was aimed at Campbell Coal and not at the employees of neutral contractors."[5]
 
 
 7
 "[T]he Board's interpretation of the Act and the Board's application of it in doubtful situations are entitled to weight." N. L. R. B. v. Denver Bldg. & Const. Trades Council, supra, 341 U.S. at page 692, 71 S.Ct. at page 953.
 
 
 8
 We recognize the doubt, but we must give weight to the resolution of it by the Board. So doing we should refrain on the facts of this case from repudiating the judgment of the Board that an object of the picketing, though not necessarily the sole object, see N. L. R. B. v. Denver Bldg. & Const. Trades Council, supra, 341 U.S. at page 689, 71 S.Ct. at page 951, was within the proscription of section 8(b) (4) (A). Though the Union was within its rights in appealing directly to neutral employers not to accept deliveries from the primary employer, when picketing followed noncompliance with the Union's appeal the combination of circumstances could be considered by the Board in determining that an object of the picketing came within the object condemned by the secondary boycott section of the statute. The same can be said of the failure of the Union to inform striking employees of neutral employers that the picket line was not aimed at those employers; that, too, was a factor the Board could consider, as it did.
 
 
 9
 The Union contends that the Board's decision is in derogation of section 13 which provides that nothing in the statute, "except as specifically provided for herein, shall be construed * * * to interfere with or impede * * * in any way the right to strike."[6] But section 8(b) (4) (A) is a specific provision and if it is violated section 13 is of no help. Cf. N. L. R. B. v. International Rice Milling Co., supra, 341 U.S. at page 673, 71 S.Ct. at page 965. While the right to strike must be upheld unless the evidence fairly brings a case within some limitation upon that right, we cannot say that the evidence did not warrant the Board in finding that the conduct as a whole was within the limitation contained in section 8(b) (4) (A).
 
 
 10
 We have considered also the Union's reliance upon the well established principle that peaceful picketing is an exercise of freedom of expression, guaranteed by the First Amendment. Carlson v. People of State of California, 310 U.S. 106, 60 S.Ct. 746, 84 L.Ed. 1104; Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093. The Union urges that this principle must be vindicated unless the situation clearly warrants the contrary. But the Supreme Court has held that section 8(b) (4) (A) is not an abridgment of the First Amendment. International Brotherhood of Electrical Workers, Local 501, A. F. of L. v. N. L. R. B., 341 U.S. 694, 705, 71 S.Ct. 954, 95 L.Ed. 1299; cf. Carpenters and Joiners Union of America, Local No. 213 v. Ritter's Cafe, 315 U.S. 722, 62 S.Ct. 807, 86 L.Ed. 1143. And, as we have already indicated, the facts do not warrant us in repudiating the Board's finding that that section was violated.
 
 
 11
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 49 Stat. 452 (1935), as amended 29 U.S.C. § 158(b) (4) (A) (1952), 29 U.S. C.A. § 158(b) (4) (A)
 
 
 [2]
 While § 8(b) (4) does not expressly mention "primary" or "secondary" disputes, strikes, or boycotts, it is often referred to in the Act's legislative history as one of the Act's "secondary boycott sections." The other is § 303, 61 Stat. 158 (1947), 29 U.S.C. § 187 (1952), 29 U.S.C.A. § 187. See N. L. R. B. v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 686, 71 S.Ct. 943, 95 L.Ed. 1284; N. L. R. B. v. International Rice Milling Co., 341 U.S. 665, 673 note 8, 71 S.Ct. 961, 95 L.Ed. 1277. An interesting review of the subject is found in 45 Georgetown L.J. 614 (1957)
 
 
 [3]
 116 N.L.R.B. 1020
 
 
 [4]
 "No rigid rule which would make these few factors conclusive is contained in or deducible from the statute." 97 U.S. App.D.C. at page 176, 229 F.2d at page 517
 
 
 [5]
 116 N.L.R.B. at 1022
 
 
 [6]
 49 Stat. 457 (1935), 29 U.S.C.A. § 163
 
 
 
 12
 BAZELON, Circuit Judge (dissenting).
 
 
 13
 The Union agent requested the neutral employer not to accept deliveries from the primary employer. Nothing transpired which could be construed as a threat or pressure. Upon refusal of the request, the Union picketed the site of the neutral employer as it had done in similar cases of refusal. It is clear that the Union was within its rights in making its request of the neutral employer. And ordinarily picketing of the site shared with a neutral employer is not forbidden. Nevertheless, the Board ruled that, in these circumstances, cessation of work by the employees of the neutral employer gave rise to an inference that picketing was directed against the neutral employer, as pressure for compliance with the Union's request, rather than against the primary employer. And because the Union took no affirmative action to inform employees of the neutral employer that the picket line was aimed solely at the primary employer,[1] the Board held this inference conclusive.
 
 
 14
 I do not think there is adequate support for the inference of illegality. The Board makes an unsupported inference and then imposes on the Union a duty to negate it by affirmative action. The employees of the neutral employer are free to support the Union out of feelings of solidarity. The law does not forbid the Union to receive such support. The Board's requirement of affirmative action is calculated to deprive the Union of that support. This, of course, seriously impairs the Act's basic policy not "to interfere with or impede * * * in any way the right to strike." 49 Stat. (1935), 29 U.S.C.A. § 163.
 
 
 
 Notes:
 
 
 [1]
 I read the court's opinion as requiring affirmative action by the Union only where there has been a request by the Union to the neutral employer not to accept deliveries from the primary employer and the neutral employer has refused