Mr. Justice Black,
concurring.
Because of the language of § 8 (b)(4) (ii)(B) of the National Labor Relations Act and the legislative history set out in the opinions of the Court and of my Brother Harlan, I feel impelled to hold that Congress, in passing this section of the Act, intended to forbid the striking employees of one business to picket the premises of a neutral business where the purpose of the picketing is to persuade customers of the neutral business not to buy goods supplied by the struck employer. Construed in this way, as I agree with Brother Harlan that it must be, I believe, contrary to his view, that the section abridges freedom of speech and press in violation of the First Amendment.
*209 “Picketing,” in common parlance and in §8 (b)(4) (ii)(B), includes at least two concepts: (1) patrolling, that is, standing or marching back and forth or round and round on the streets, sidewalks, private property, or elsewhere, generally adjacent to someone else’s premises; (2) speech, that is, arguments, usually on a placard, made to persuade other people to take the picketers’ side of a controversy. See Mr. Justice Douglas concurring in Bakery & Pastry Drivers v. Wohl, 315 U. S. 769, 775. See also Hughes v. Superior Court, 339 U. S. 460, 464-465, and concurring opinions at 469. While “the dissemination of information concerning the facts of a labor dispute must be regarded as within that area of free discussion that is guaranteed by the Constitution,” Thornhill v. Alabama, 310 U. S. 88, 102, patrolling is, of course, conduct, not speech, and therefore is not directly protected by the First Amendment. It is because picketing includes patrolling that neither Thornhill nor cases that followed it lend “support to the contention that peaceful picketing is beyond legislative control.” Giboney v. Empire Storage & Ice Co., 336 U. S. 490, 499-500. Cf. Schneider v. State, 308 U. S. 147, 160-161.[1] However, when conduct not constitutionally protected, like patrolling, is intertwined, as in picketing, with constitutionally protected free speech and press, regulation of the non-protected conduct may at the same time encroach on freedom of speech and press. In such cases it is established *210 that it is the duty of courts, before upholding regulations of patrolling, “to weigh the circumstances and to appraise the substantiality of the reasons advanced in support of the regulation of the free enjoyment of the rights” of speech and press. Schneider v. State, 308 U. S., supra, at 161. See also, e. g., N. A. A. C. P. v. Alabama ex rel. Patterson, 357 U. S. 449, 460-462; N. A. A. C. P. v. Button, 371 U. S. 415, 438-439.
Even assuming that the Federal Government has power to bar or otherwise regulate patrolling by persons on local streets or adjacent to local business premises in the State of Washington,[2] it is difficult to see that the section in question intends to do anything but prevent dissemination of information about the facts of a labor dispute— a right protected by the First Amendment. It would be different (again assuming federal power) if Congress had simply barred or regulated all patrolling of every kind for every purpose in order to keep the streets around interstate businesses open for movement of people and property, Schneider v. State, supra, at 160-161; or to promote the public safety, peace, comfort, or convenience, Cantwell v. Connecticut, 310 U. S. 296, 304; or to protect people from violence and breaches of the peace by those who are patrolling, Thornhill v. Alabama, supra, at 105. Here the section against picketing was not passed for any of these reasons. The statute in no way manifests any government interest against patrolling as such, since the only patrolling it seeks to make unlawful is that which is carried on to advise the public, including consumers, that certain products have been produced by an employer with *211 whom the picketers have a dispute. All who do not patrol to publicize this kind of dispute are, so far as this section of the statute is concerned, left wholly free to patrol. Thus the section is aimed at outlawing free discussion of one side of a certain kind of labor dispute and cannot be sustained as a permissible regulation of patrolling. Cf. Carlson v. California, 310 U. S. 106, 112.
Nor can the section be sustained on the ground that it merely forbids picketers to help carry out an unlawful or criminal undertaking. Compare Giboney v. Empire Storage & Ice Co., supra. For the section itself contains a proviso which says that it shall not be construed “to prohibit publicity, other than picketing, for the purpose of truthfully advising the public, including consumers . . . that a product or products are produced by an employer with whom . . . [the picketers have] a primary dispute . . . .” Thus, it is clear that the object of the picketing was to ask Safeway customers to do something which the section itself recognizes as perfectly lawful. Yet, while others are left free to picket for other reasons, those who wish to picket to inform Safeway customers of their labor dispute with the primary employer, are barred from picketing — solely on the ground of the lawful information they want to impart to the customers.
In short, we have neither a case in which picketing is banned because the picketers are asking others to do something unlawful nor a case in which all picketing is, for reasons of public order, banned. Instead, we have a case in which picketing, otherwise lawful, is banned only when the picketers express particular views. The result is an abridgment of the freedom of these picketers to tell a part of the public their side of a labor controversy, a subject the free discussion of which is protected by the First Amendment.
I cannot accept my Brother Harlan’s view that the abridgment of speech and press here does not violate the *212 First Amendment because other methods of communication are left open. This reason for abridgment strikes me as being on a par with holding that governmental suppression of a newspaper in a city would not violate the First Amendment because there continue to be radio and television stations. First Amendment freedoms can no more validly be taken away by degrees than by one fell swoop.
For these reasons I concur in the judgment of the Court vacating the judgment of the Court of Appeals and remanding the case with directions to enter judgment setting aside the Board’s order.

 Thornhill v. Alabama and Carlson v. California, 310 U. S. 106, came down the same day. Neither held that picketing was constitutionally immune from legislative regulation or complete proscription. Thornhill held that a statute against picketing was too broad, inexact, and imprecise to be enforceable, and Carlson held, 310 U. S., at 112, “The sweeping and inexact terms of the ordinance disclose the threat to freedom of speech inherent in its existence.” This principle of Thornhill and Carlson has been uniformly followed. See, e. g., Edwards v. South Carolina, 372 U. S. 229; Henry v. City of Rock Hill, 376 U. S. 776.

 ‘‘Municipal authorities, as trustees for the public, have the duty to keep their communities' streets open and available for movement of people and property, the primary purpose to which the streets are dedicated.” Schneider v. State, 308 U. S. 147, 160. (Emphasis supplied.) Cf. Allen-Bradley Local No. 1111 v. Wisconsin Employment Relations Board, 315 U. S. 740, 749.